[S. F. No. 1658.   In Bank.—May 5, 1900.]

MARGUERITE D. HARRIGAN, Administratrix, Appellant, v.
HOME LIFE INSURANCE COMPANY, Respondent.

LIFE INSURANCE—PAYMENT OF FIRST PREMIUM BY NOTE—CONDITION—
DELIVERY OF POLICY—WAIVER.—Where the note of the insured was
given for the first annual premium upon a life insurance policy,
for which a receipt was given by the general agent specifying
that if the application was accepted the policy should be in
force from the date of acceptance, and the note was forwarded
by such agent to the home office, and its amount was there
charged to the agent, and the policy was issued and delivered
to the insured, it must be held that the first premium was paid
by the note, and the delivery of the policy is evidence that cash
payment was waived in so far as it may have been a condition
precedent to the delivery of the policy.

ID.—NONPAYMENT OF PREMIUMS—NOTICE REQUIRED BY NEW YORK STAT-
UTE—FORFEITURE—CONSTRUCTION OF POLICY.—A policy issued at the
New York office by a New York life insurance company, and
which is a contract to be performed in that state, is to be
read as if the New York statute, requiring thirty days' written
notice to be given after nonpayment of a premium before the
policy can be declared forfeited, were incorporated in the
policy; and there can be no forfeiture of such policy unless the
company alleges and proves nonpayment after due service of
the notice required by law.

ID.—LIMITATION OF POWER—WAIVER OF NOTICE NOT PERMISSIBLE.—A
New York life insurance company has no power to declare a
forfeiture in the absence of the notice required by law; and the
statute being a limitation upon its power, the statutory notice
cannot be waived, though an express waiver of the notice is
inserted in the policy.

ID.—STATUTE OF LIMITATIONS—POLICY EXECUTED OUT OF STATE.—An ac-
tion upon a policy of insurance executed out of this state is
barred after the lapse of two years from the time of the accrual
of a cause of action thereupon, under subdivision 1 of section
339 of the Code of Civil Procedure.

ID.—PLACE OF EXECUTION OF POLICY—DELIVERY.—A policy of insurance
which does not expressly stipulate that the policy shall not be
in force until actual payment of the premium in cash, and
which has been issued in consideration of a note for the pre-
mium, given to the general agent under a contract which ex-
pressly stipulated that the policy should be in force from the
date of the acceptance of the application by the company, the
note having been charged by the company to the agent when
the policy was issued, and which policy purports to be signed

and delivered in the state of New York, is a binding policy from the date of its execution and transmission from New York, and is to be deemed executed out of the state.

ID.—LAPSE OF PERIOD OF LIMITATION—ABSENCE OF NOTICE, PROOF, AND DEMAND.—Where the covenant of the policy was to pay within sixty days after notice and proof of death and the interest of the party giving the notice, the covenant is practically for a demand of payment, and, in the absence of any notice, proof of death, or demand of payment within the period of limitation, the claim is stale, and no action can be maintained thereupon.

ID.—RUNNING OF STATUTE—ACCRUING OF CAUSE OF ACTION—POSSIBLE ACTS OF CREDITOR MAKING CLAIM PAYABLE.—A cause of action is deemed to have accrued in such case, for the purpose of setting the statute of limitations in motion, as soon as the creditor by his own acts could make the claim payable, in spite of the debtor. He cannot prevent the statute from running by failing to make a demand required to establish his right of action.

ID.—RIGHT OF FOREIGN INSURANCE COMPANY TO PLEAD STATUTE—APPOINTMENT OF AGENT—GENERAL STATUTE—SPECIAL PROVISIONS OF CODE.—The general act of 1872, in relation to foreign corporations, precluding the plea of the statute of limitations, unless the name of a person residing in the county of its principal place of business upon whom process may be served shall be filed in the office of the secretary of state, has no application to a foreign insurance company doing business in this state, which is controlled by the special provisions of the Political Code requiring foreign insurance corporations to file in the office of the insurance commissioner their designation of the principal agent or chief manager of the business of such corporation in the state, giving his name and place of residence as the one on whom process may be served.

ID.—STATUTORY CONSTRUCTION — AMENDMENTS OF SPECIAL STATUTE— ACTS IN PARI MATERIA—CONTROL OF GENERAL STATUTE.—All amendments made by the legislature to the special provisions of the statute regulating foreign insurance corporations must be construed together with the original provisions thereof as being *in pari materia*, and the intention of the legislature must be gathered from the consideration of all the special provisions enacted on that subject; and those special provisions must govern in relation to that subject matter as against general provisions elsewhere, although the latter, standing alone, would be broad enough to include the subject to which the more particular provisions relate.

ID.—CERTIFICATE OF INSURANCE COMMISSIONER.—The certificate issued by the insurance commissioner pursuant to section 595 of the Political Code, showing that a foreign life insurance company named has fully complied with the laws of the state and has appointed and commissioned a person designated therein as

agent, and that said life insurance company and its agent are authorized to do business in this state, is *prima facie* evidence of the compliance of such insurance company with the special provisions of the Political Code.

ID.—LOCALITY OF FOREIGN INSURANCE COMPANY DOING BUSINESS IN THIS STATE—RIGHT TO PLEAD STATUTE OF LIMITATION.—A foreign insurance company which is lawfully doing business in this state, and has duly submitted itself to the jurisdiction of its courts, must be deemed to be in the state, both for the purpose of suit against it and for the purpose of its right to plead the statute of limitations to an action brought against it in this state.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinions of the court in Bank and in Department.

Sullivan & Sullivan, and J. T. Houx, for Appellant.

The policy is governed by the law of New York, as the place of performance of the contract. (*Andrews v. Pond,* 13 Pet. 65; *Warren v. Lynch,* 5 Johns. 238, 244; *Newman v. Kershaw,* 10 Wis. 333; *Central Trust Co. v. Burton,* 74 Wis. 329; *Hyatt v. Bank of Kentucky,* 8 Bush, 193; *De Sobry v. De Laistre,* 2 Har. & J. 191; 3 Am. Dec. 535; *Harrison v. Edwards,* 12 Vt. 648; 36 Am. Dec. 364; *Hall v. Cordell,* 142 U. S. 116.) The statute of New York as to notice before a forfeiture can be declared is the law of the contract, and is part of it, which remained in force until the death of the insured. (*Greisemer v. Mutual Life Ins. Co.,* 10 Wash. 202; *Baxter v. Brooklyn Ins. Co.,* 119 N. Y. 450; *De Frece v. National Life Ins. Co.,* 136 N. Y. 144; *Griffith v. New York Life Ins. Co.,* 101 Cal. 627; 40 Am. St. Rep. 96; *Jurgens v. New York Life Ins. Co.,* 114 Cal. 165, 166.) The policy was executed in California because delivered here, and is not barred by the two years' statute, but falls under section 337 of the Code of Civil Procedure. (*Griffith v. New York Life Ins. Co., supra; Ivey v. Kern County Land Co.,* 115 Cal. 196.) The delivery of the policy was a waiver of any condition of prepayment. (*Berliner v. Travelers' Ins. Co.,* 121 Cal. 451.) The place of delivery is the place where the last act is performed to give effect to the contract. The first delivery was to defend-

ant's agent in California, and the policy did not leave the custody of the insurance company until delivered in California to the plaintiff. (Code Civ. Proc., sec. 1933; Civ. Code, sec. 1626; *Ryer v. Oesting*, 119 Cal. 564; *Giddings v. Insurance Co.*, 102 U. S. 108; *Milliken v. Pratt*, 125 Mass. 375; 28 Am. Rep. 241; *Ames v. McCamber*, 124 Mass. 85; *Northampton Live Stock Ins. Co. v. Tuttle*, 40 N. J. L. 476; *Shuenfeldt v. Junkermann*, 20 Fed. Rep. 357; *Whiston v. Stodder*, 8 Mart. (La.) 95; 13 Am. Dec. 281; *Scudder v. Union Nat. Bank*, 91 U. S. 406; *McFarland v. Sikes*, 54 Conn. 252; 1 Am. St. Rep. 111; *State v. Young*, 23 Minn. 560; *United States v. Le Baron*, 19 How. 73, 76, 77; *Ford v. Buckeye State Ins. Co.*, 6 Bush, 133; 99 Am. Dec. 633.) Kindred questions are decided in insurance cases. *(Hoyt v. Mutual Ben. etc. Co.*, 98 Mass. 539, 543, 544; *Real Estate etc. Ins. Co. v. Roessle*, 1 Gray, 336, 337; *Weinfeld v. Mutual etc. Assn.*, 53 Fed. Rep. 208; *Wainer v. Milford Mut. etc. Ins. Co.*, 153 Mass. 335; *Meyer v. Liverpool etc. Ins. Co.*, 121 Mass. 339, 343; *Markey v. Mutual Ben. Ins. Co.*, 118 Mass. 178, 194; *McClave v. Mutual etc. Assn.*, 55 N. J. L. 187; *New York etc. Co. v. People's Fire Ins. Co.*, 96 Mich. 20.) Limitation does not begin to run until the loss is due and payable, and the cause of action has accrued. *(Case v. Sun Ins. Co.*, 83 Cal. 473; *Spare v. Home Mut. Ins. Co.*, 9 Saw. 142, and cases there cited; *Collins v. Driscoll*, 69 Cal. 550; *Jefferson v. Wendt*, 51 Cal. 573, 575; *Leonard v. Flynn*, 89 Cal. 542; 23 Am. St. Rep. 500.) The statute of limitation does not apply because the act of 1872, requiring the filing of the designation of an agent on whom process may be served with the secretary of state was not complied with. (Wood on Limitations, 599; *Pierce v. Southern Pac. Co.*, 120 Cal. 161.)

Elliott McAllister, and F. D. Madison, for Respondent.

The policy was executed out of the state, and was governed by section 339, subdivision 1, of the Code of Civil Procedure. The contract was complete when the company accepted the risk, and signed and mailed the policy unconditionally. (Bliss on Life Insurance, 2d ed., 215; 1 May on Insurance, 3d ed., 97; *Ford v. Buckeye State Ins. Co.*, 99 Am. Dec. 671, note; *Yonge v. Equitable Life Assn.*, 30 Fed. Rep. 902; *Hallock v. Commercial Ins. Co.*, 26 N. J. L. 268; *Commercial Ins. Co. v. Hallock*, 27 N.

J. L. 645; 72 Am. Dec. 379; *Fried v. Royal Ins. Co.*, 47 Barb.
127; 50 N. Y. 243; *New York Life Ins. Co. v. Babcock*, 104 Ga.
67; 69 Am. St. Rep. 134.)   Plaintiff could not stop the running
of the statute of limitations by delaying the notice of death,
proofs of loss, and demand of payment, but the statute began to
run after the lapse of a reasonable time in which he could have
made the claim payable, and the claim is barred, if no demand
was made within the statutory period.   (*Bills v. Silver Min.
Co.*, 106 Cal. 9; *Thomas v. Pacific Beach Co.*, 115 Cal. 136; *Williams v. Bergin*, 116 Cal. 56; *Meherin v. Produce Exchange*, 117
Cal. 215.)   The defendant complied with the Political Code, as
shown by the certificate of the insurance commissioner, based on
section 596 of the Political Code.   The compliance with section
616 of the Political Code is all that is required of foreign insurance companies.   The amendments of section 616 are to be construed together with the original as being *in pari materia.*
(Sutherland on Statutory Construction, sec. 283.)   The specific provisions for foreign insurance corporations must control
the general provision for corporations.   (Endlich on Interpretation of Statutes, 288; *Frandzen v. County of San Diego*, 101
Cal. 317.)   The New York statute cannot prescribe a rule of
evidence for the courts of this state, or have any extraterritorial
operation.   (*Equitable Life Ins. Co. v. Frommhold*, 75 Ill. App.
43; *Tevis v. Pitcher*, 10 Cal. 479; *Hoadley v. Northern Transp.
Co.*, 115 Mass. 304; 15 Am. Rep. 106; *Helton v. Alabama etc.
R. R. Co.*, 97 Ala. 275; *Richmond etc. R. R. Co. v. Mitchell*, 95
Ga. 78.)

McFARLAND, J.—Action on an insurance policy.   The defendant is a New York corporation.   A nonsuit was granted
in the court below, and judgment went for defendant, from
which, and from an order denying a new trial, plaintiff appeals.
The motion for a nonsuit was upon these grounds: 1. That it
does not appear that any premiums were paid after the first
annual premium; 2. That it appears affirmatively that no such
premiums were ever tendered; and 3. That the action is barred
by the statute of limitations of this state, and particularly by
subdivision 1 of section 339 of the Code of Civil Procedure.
The policy was made in 1888, and the insured, Hope, died in
1891; he gave a note for the first premium, although it does

not appear whether or not he ever paid it; but it clearly appears that he never paid any part of either of the other three premiums which became due before his death. Nearly four years after his death this action was commenced, upon the theory that, as a certain notice required by a New York statute had not been given by respondent, the failure to pay premiums did not affect its obligations in the policy.

The appeal was first heard in Department, and the judgment was there affirmed, on the ground that the action was barred by subdivision 1 of section 339 of the Code of Civil Procedure. In the opinion of the Department, delivered by Temple, J., all the main points in the case were discussed and passed upon; and we are satisfied with that opinion, and that the case, as then presented, was correctly determined, and said opinion is hereby adopted. The arguments as to the statute of limitations were there wholly directed to the question whether or not the policy was to be considered as a "writing executed out of this state." But on a petition for hearing in Bank appellant for the first time called attention to an act of the legislature, approved April 1, 1872, entitled "An act in relation to foreign corporations" (Stats. 1871-72, p. 826), and contended that under this act respondent was entirely precluded from pleading any part whatever of the statutes of limitation. Thereupon a hearing in Bank was granted, and the case was subsequently argued and submitted in Bank.

After full consideration of the question, we are of the opinion that the act of 1872 does not prevent respondent from availing itself of the statute of limitations. Waiving the question whether the subject of the act is expressed in the title, it must be construed in connection with other legislation on the subject of foreign insurance corporations. The act refers to foreign corporations generally, and provides that every such corporation doing business in this state must "designate some person residing in the county in which the principal place of business of such corporation is, upon whom process issued by authority of or under any law of this state may be served," and "shall file such designation in the office of the secretary of state." Section 2 provides that a corporation failing to comply with the act shall be denied the benefit of the statute of limitations.

The Political Code, from section 594 to section 634, inclusive, deals specifically with insurance corporations, both domestic and foreign, and prescribes conditions upon which the latter may do business in this state, and particularly provides in great detail how foreign insurance corporations must put themselves in position to be served with process in this state, by appointing agents, entering into certain contracts, etc. Section 616 contains an elaborate scheme on the subject. Its main provisions are that a foreign insurance corporation, as conditions precedent to doing business in this state, must file in the office of the insurance commissioner the name of an agent and his place of residence in this state, upon whom process may be served; that process so served gives jurisdiction of the corporation; that "the agent so appointed and designated" shall 'be deemed a general agent, and "must be the principal agent or chief manager of the business of such corporation or company in this state." It is also further provided that the foreign insurance corporation must make and file with the commissioner an agreement or stipulation in writing, which is set forth in detail with the form of the agreement given, by which it is stipulated, in substance, that if at any time the corporation shall be without an agent on whom process may be served, service thereof may be made on the insurance commissioner, who must within a certain time transmit to the corporation a copy of the process. When this section was first enacted it merely provided generally that the name of the agent should be filed with the insurance commissioner; all the other parts of the section were added by amendment in 1878, several years after the date of said act of 1872. These various enactments are all statutes *in pari materia*—all being on the subject of the appointment by foreign corporations of an agent resident here upon whom process may be served; they must therefore be construed together, and the intention of the legislature on the subject must be gathered by consideration of them all. This rule is well established. In *Frandzen v. San Diego*, 101 Cal. 321, this court, quoting from a text-book, said: "Where there are in an act [and where several acts on the same subject are involved the rule is the same] specific provisions relating to a particular subject, they must govern in respect to that subject, as against

general provisions in other parts of the statute, although the latter, standing alone, would be broad enough to include the subject to which the more particular provisions relate." The rule is aptly illustrated and expressed in the case of *Sloop Elizabeth*, 1 Paine, 11. In that case it was contended that the "Elizabeth," although engaged in the coasting trade, was forfeited under a general act of Congress which provided that "if any ship or vessel shall depart from any port of the United States without a clearance or permit, such vessel, etc., shall be wholly forfeited"; but the court held that as under another act a vessel licensed for the coasting trade was compelled to give bonds that she would not proceed to any foreign port, it was not the intent to subject such a vessel to the necessity of taking permits or clearances every time it sailed. The court said: "From the very general and comprehensive phraseology here used, it is contended on behalf of the United States that the court cannot except vessels of any description whatever. It is very certain that this section, taken by itself, and without reference to other parts of this and other acts made *in pari materia*, would include the case of the 'Elizabeth.' But it is the duty of a court in construing a law in doubtful cases to compare all its parts, in order to discover the intention of the legislature; and, however broad some of its expressions may be, yet if, on examination, it shall clearly appear that they are and were intended to be limited by other provisions of the same or other acts on the same subject, it cannot be improper to restrain them accordingly." And so, with respect to the case at bar, the legislature having provided with great detail how a foreign insurance corporation must submit itself to the jurisdiction of our courts, it could hardly have been intended to subject them to the additional necessity of filing another appointment of an agent with the secretary of state. Section 616 of the Political Code modifies the act of 1872. The former, dealing specifically with insurance companies, supersedes the general provisions of the latter. Moreover, the two are to a great extent inconsistent, and can be harmonized only by holding that the provisions of the code alone apply to insurance corporations. By the act of 1872 the named agent must be a resident of the county where the principal place of business of

the corporation is, and any kind of an agent so residing could be named; while under the code he must be "the principal agent or chief manager of the business of such corporation or company in this state," without reference to his residence in any county, and he "must be deemed in law a general agent." One appointment of an agent would not, therefore, be a compliance with both the act of 1872 and the code. Again, in accordance with the code the corporation enters into a contract with the state by which, "in consideration of the permission granted by the state of California to it to transact insurance business in this state," it makes certain covenants as to how it may be served with process; and it is not to be supposed that the legislature intended to violate that contract. Our conclusion is that the act of 1872 does not apply to foreign insurance corporations, but that their rights and duties, with respect to the appointment of agents for the service of process, are prescribed and regulated by the said provisions of the code, and that if they comply with the code they incur no penalty by not complying with the act of 1872.

Section 595 of the Political Code provides that the insurance commissioner must issue a certificate of authority to transact business in this state to any persons who are solvent, not in arrears of taxes, etc., and "who have fully complied with the laws of this state." In the case at bar, the plaintiff herself introduced without objection such a certificate issued by the insurance commissioner in 1888 to respondent. In that document the commissioner, after reciting that respondent had "in all respects fully complied with the laws of California regulating and governing the transaction of insurance business in this state," and had "appointed and commissioned William H. Dunphy of the city and county of San Francisco as his attorney and agent in this state, as required by section 616 of the Political Code of this state," certifies, "by virtue of the authority conferred upon me by section 595 of said code," that "said Home Life Insurance Company and its agent are duly authorized to transact the business of life insurance in this state." This certificate was sufficient *prima facie* evidence of the compliance by respondent with the provisions of the code above mentioned.

The respondent having accepted the invitation of the state to do business here on the conditions imposed by our laws, and having submitted itself to the jurisdiction of our courts and expressly provided the means by which it might be served with process here, and the state having granted its permission to do business here on these conditions, it is within the state for all purposes of suit with respect to matters growing out of such business, and it has all the ordinary rights of litigants here, including the right to rely on the statute of limitations—that right not having been by law denied it. It was so held in *Lawrence v. Ballou*, 50 Cal. 258. In that case a foreign corporation had pleaded the statute of limitations as a defense, and it was strenuously argued by counsel that such plea could not be maintained by such a corporation, and cases were cited to that point —particularly the case much relied on of *Olcutt v. Tioga R. R. Co.*, 20 N. Y. 210; 75 Am. Dec. 393; but the court held otherwise, and said: "We are of opinion that when a foreign corporation has a managing agent in this state (exercising openly his authority as such, and without fraudulent concealment) the corporation is within the state within the intent of the statute of limitations." (See, also, *King v. National etc. Co.*, 4 Mont. 1, where *Lawrence v. Ballou, supra,* is approved, and other authorities cited.) And *Lawrence v. Ballou, supra,* cannot be held to have been overruled or affected by a certain dictum in the opinion in *Pierce v. Southern Pac. Co.*, 120 Cal. 163; it was unnecessary to the decision of the case, and *Lawrence v. Ballou, supra,* was not called to the attention of the court, nor alluded to in the opinion. *Olcott v. Tioga R. R. Co., supra,* and a few other cases like it, are founded on the notion that a foreign corporation being "out of the state" is within the saving clause as to absent parties, and that as they cannot be sued in the state the statute of limitations does not run in their favor. Of course, the statute does not run against a cause of action while there is an impediment to bringing a suit on it which is made by the act or status of the party to be charged; but when there is no such impediment, and an action may be commenced and jurisdiction of the defendant obtained as soon as the cause of action accrues, the statute then begins to run. In the cases relied on by appellant no consideration appears to have been

given to statutes like those of this state above mentioned, or to contracts like those in the case at bar, in which foreign corporations agree to do business in the state upon the conditions that they will submit to the jurisdiction of our courts, and appoint persons and furnish means by which process may be served on them in the state. It would be a manifest legal inconsistency to say that for the purpose of bringing an action against it here, and serving process on it here, the respondent is within the state, but for the purpose of making a common and legitimate defense to such action it is "out of the state."

The judgment and order appealed from are affirmed.

Temple, J., Garoutte, J., Van Dyke, J., Harrison, J., and Henshaw, J., concurred.

The following is the opinion rendered in Department Two, August 14, 1899, approved and adopted in the foregoing decision of the court in Bank:

TEMPLE, J.—February 20, 1888, plaintiff's intestate applied through Conway, an agent of defendant in San Francisco, for a policy of life insurance upon his life for ten thousand dollars. The medical examination was had and the risk accepted. Hope gave his note, payable to the order of Dunphy, the general agent at San Francisco, for the amount of the first premium, and received from the agent a conditional receipt. Dunphy testified: "He gave his note, and it was to show that a settlement was made at the time the application was made. We call it a conditional or binding receipt."

The receipt provided that in the event of the acceptance of the application the policy should be in force from the date of the acceptance. The application and note were placed with the general agent at San Francisco, who forwarded them to the home office at New York for its approval and acceptance. The amount of the note was charged to Conway, the soliciting agent, and was actually paid to the company by him about one year thereafter. Whether Hope paid is left as a matter of inference and presumption.

A policy was issued at the New York office, which alone had authority to accept and issue policies, on the eighth day of

March, 1888, was sent to the San Francisco agency and received there March 12, 1888. Some time during the same month, and before Conway had actually paid the amount of the first premium to the company, the policy was handed to Hope, or to his father in law for him.

It must be held that the first annual premium was paid by the promissory note, and that the delivery of the policy is evidence that payment in actual cash was waived, if it can justly be said that such payment is made a condition precedent to the delivery of the policy.

Apparently, Hope paid no further attention to the insurance, and died September 22, 1891, delinquent for three annual premiums. This action was commenced August 21, 1895.

The defendant, among other defenses, denied the issuance of a paid policy; avers that the first premium was not paid before the delivery of the policy, and, therefore, by the terms of the policy defendant is not liable thereon; also that the policy lapsed by the failure of deceased to pay the annual premiums, and pleads the statute of limitations.

At the trial a nonsuit was granted, and a motion for a new trial was made by the plaintiff, which was denied. The appeal is from that order and from the judgment.

Motion for nonsuit was based upon three grounds: 1. It does not appear that any premium except the first was paid; 2. It was proven that no premium except the first was ever tendered; and 3. The action is barred by subdivision 1 of section 339 of the Code of Civil Procedure.

It is averred in the complaint that the second premium had not been paid, and it is not contended that any part of any premium had been tendered. In fact, Hope paid no attention to it after its issuance.

The insurance company is located in the state of New York, and it is agreed that the policy is a contract which was to be performed in that state. By a statute of that state, then and now in force, it was provided: "No life insurance company doing business in the state of New York shall have power to declare forfeited or lapsed any policy hereinafter issued or renewed by reason of nonpayment of any annual premium or interest, or any portion thereof, except as hereafter provided."

It is then provided that written notice shall be mailed to the assured and no forfeiture declared until thirty days thereafter. The policy contains an express waiver of this notice. In *Griffith v. New York Life etc. Ins. Co.*, 101 Cal. 627, 40 Am. St. Rep. 96, this precise question was decided, and it was ruled that the statutory notice could not be waived. "The statute is a limitation upon the power of the company to do a specific thing, except under prescribed conditions. That which a corporation has not the power to do, if attempted to be done by it is *ultra vires* and void."

It is averred in the complaint, and not denied in the answer, that no statutory notice was ever mailed to Hope. It is held by the court of appeals in New York (*De Frese v. National Life Ins. Co.*, 136 N. Y. 144) that: "The contract is to be read as if the act of 1876 had been literally incorporated into it. There could be no forfeiture for this cause unless the defendant alleged and proved nonpayment after due service of the notice required by law." This authority was followed in *Griffith v. New York Life etc. Ins. Co.*, *supra*.

The suit was not commenced for more than three years after the death of Hope, but was commenced in less than four years. An action upon a contract, obligation, or liability founded upon an instrument in writing executed in this state is barred in four years (Code Civ. Proc., sec. 337); if founded upon an instrument in writing executed out of the state, in two years. (Code Civ. Proc., sec. 339, subd. 1.) Is the policy upon which suit is based an instrument executed in this state, or was it executed, within the meaning of the statute, in the state of New York?

The question of locality depends upon the further inquiry as to when the contract became in force. The defendant contends that it was in force as soon as the risk was accepted by the company and the policy was issued and sent from its office to its local agent for Hope. The plaintiff claims that the policy was not in force until it was handed to Hope by the local agent. This last contention is based, in part, at least, upon the fact that Hope had not paid the first premium in cash, and they argue that such payment was expressly made a condition to the taking effect of the policy. Appellant relies for authority

upon this point upon *Griffith v. New York Life etc. Ins. Co.,* *supra,* and *Jurgens v. Life Ins. Co.,* 114 Cal. 165.

In the policies considered in those cases it was expressly stipulated that the policy should not be in force until actual payment of the premium to the company during the lifetime and good health of the insured. There is no equivalent stipulation in the policy involved here. There was no provision that it should not be in force until the payments were made. There is no express requirement that the premiums shall be paid in money, nor were the agents restricted, as in those cases, by the express direction that they should receive only cash in payment. Still, in each of those cases it was held that the agent could waive the requirement as to cash payments, and that he did so by an unconditional delivery of the policy. Another difference between the Griffith case and this is that there the policy was issued and sent with express instructions not to deliver it until the money was paid by the insured and he was found to be in good health. There was nothing of the kind in this case.

The only mention of cash payments in this case is an indorsement upon the policy, which is signed by no one and presumably not known to the insured prior to his receipt of the policy.

In his application he was made to covenant that the policy should not bind the company "until the premium thereon shall have been received by said company in the lifetime of the assured, and that it shall not continue in force in case of default of payment of any note or notes which may be given in part payment of the premium thereon." Instead of prohibiting payment by note, this was a plain intimation that notes might be accepted in payment.

The application made by Hope was reported to the general agent at San Francisco, who was also present when the note was given. He testified: "He gave his note, and it was to show the company that a settlement was made at the time the application was made. We call it a conditional binding receipt." He said, further, that the receipt showed the amount of premium paid for the amount of insurance applied for, and stated that the insurance would be in force "from the date when the application was accepted from the company."

In the policy it is recited: "In consideration of the representations and agreements contained in the application therefor, and the sum of two hundred eighty-three dollars and sixty cents, to be paid on or before the delivery of this policy," etc. Among the covenants in regard to forfeiture is one to the effect that if the statements contained in the application shall be found to be untrue, "or in case the said John T. Hope shall not actually pay the first premium as aforesaid, before the delivery of this policy, and while the said John T. Hope is in good health"; or shall not pay subsequent annual premiums; or shall engage in certain specified extrahazardous employments; "or shall die in consequence of a duel, or of the violation of law—then, and in every such case, the said company shall not be liable for the payment of the sum assured, or any part thereof, and this policy shall cease, and be null, void, and of no effect."

Of course, a covenant for a forfeiture implies that the policy is in force, and must do so here, notwithstanding the use of the word "delivery"; and, besides, this contains no provision forbidding payments being made by note.

Finally, the attesting clause is as follows: "In witness whereof, the Home Life Insurance Company has, by its president and secretary, signed and delivered this contract at the city of New York, in the state of New York, this eighth day of March, 1888."

We may conclude that there was no rule of the company, condition in the policy, or in the application for it, nor any instruction to the agents, which prohibited payments by notes, or which rendered the policy inoperative until payment in money was made or duly waived. There is, therefore, no force in the argument that the delivery must have been in California because the contract could not be in force until such condition was waived by an unconditional delivery to Hope.

The question then is, whether the policy was in force so soon as issued and sent from the home office to the agent in San Francisco for Hope. There was no stipulated condition as to the delivery except that the first premuim should be first paid while he was in health. That had been paid by his note, for which he received a conditional receipt. The condition was that the

risk should be accepted, and would have been the same had the premium been paid in cash; it was a payment if the risk was accepted; otherwise not, and it was provided that the policy should be in force as soon as the application was accepted by the issuance of a policy. Could the company after the policy had been sent have then refused to deliver? The test is to suppose Hope had paid in cash, that he had been guilty of no misrepresentation, and had died while it was *in transitu.* There being no condition requiring an actual tradition of the instrument to him while alive and in good health, such as may be found in some cases, I think the company would have been liable.

Our statute makes the rule of delivery as to written instruments the same as in regard to grants (Civ. Code, sec. 1627), and in section 1059 of the Civil Code it is enacted: "Though a grant be not actually delivered into the possession of the grantee, it is yet constructively delivered in the following cases: 1. Where the instrument is by the agreement of the parties at the time of execution understood to be delivered, and under such circumstances that the grantee is entitled to immediate delivery."

It is, therefore, a matter solely of intention. If it was intended that document should be in force before it was actually handed over, it will be deemed constructively delivered. Of course, the agent could not complete the contract of insurance, but he could, provisionally, contract, subject to the approval of the principal, whose ratification would make the contract binding as made.

The corporation, by its attesting clause, declared that the instrument was delivered in New York on the 8th of March. By itself this formal clause means but little. But the understanding was that it was then to be in force, and it was sent to the local agent for delivery without condition. No act was to be done, no fact determined, before delivery. Under such instructions, supposing everything had been properly done, and all was fair and honest, had Hope died during the transmission, his beneficiaries could have enforced the policy; and, that being so, its execution was complete when it left the New York office.

And such, I think, are all the authorities.  In Bliss on Life Insurance, section 150, it is said: "If the company so far accepts the application as to prepare and forward a policy to its agent for delivery, and if payment of the premium has been made, or if such payment is not a condition of the policy's taking effect, or, being a condition, is waived, the contract is then complete, and the company cannot revoke its acceptance, though the policy had not been delivered."

To the same effect is 1 May on Insurance, 97; 1 Beach on Insurance, sec. 482; Richards on Insurance, 54; Elliott on Insurance, sec. 14; 1 Wood on Insurance, 49; *Ford v. Buckeye etc. Ins. Co.*, 6 Bush, 133; 99 Am. Dec. 671, note.

The matter is elaborately considered in *Yonge v. Equitable Life Assur. Co.*, 30 Fed. Rep. 902; also in *Hallock v. Commercial Ins. Co.*, 26 N. J. L. 268.  In this last case it is said: "Breck, the agent, and the mail were only the vehicles to carry it to him, and it was the same thing as if mailed or sent directly to the plaintiff.  The defendants suggest in answer that Breck was their agent, and that by sending it to him they did not part with the possession of the policy, and that they only gave authority to Breck to deliver, which they could and did revoke before actual delivery.  But when they mailed the policy to Breck to deliver, they did not constitute him their agent to receive it and keep it for them, nor to retain it as their agent. . . . . It was a delivery to Breck to deliver it to plaintiff, which was a good delivery to plaintiff."  This was affirmed in the court of errors.  (*Commercial Ins. Co. v. Hallock*, 27 N. J. L. 645; 72 Am. Dec. 379.  See, also, *Fried v. Royal Ins. Co.*, 47 Barb. 127; affirmed 50 N. Y. 243.)  In *New York Life Ins. Co. v. Babcock*, 104 Ga. 67, 69 Am. St. Rep. 134, the matter is again gone over and the cases cited and discussed.  It is concluded that the delivery is complete when sent to the local agent to be unconditionally delivered, and, though it was lost on the way, it was nevertheless the property of the insured.

Regarding, therefore, the expressed intention of the parties, and the law as declared in the authorities, the policy was in force when it was transmitted from New York, and is an instrument executed out of this state.

But the appellant argues that, conceding that section 339 of the Code of Civil Procedure is applicable, still it does not ap-

pear that the claim is barred, because it is not shown that the cause of action accrued two years before the commencement of the action. Hope died September 22, 1891. The complaint was filed August 21, 1895, in which it is averred that notice of the death was given more than sixty days before the action was begun.

No proof having been made, we must assume that no notice of proof was made until immediately before the action was commenced. The only statement in the policy upon the subject is the covenant to pay the legal representatives of John T. Hope, after due notice and satisfactory proof of death and interest, in accordance with the terms of the contract. It is not provided, as in *Case v. Sun Ins. Co.*, 83 Cal. 473, that an action shall not be commenced until something else has been done in addition to the demand. The main thing is notice and proof of death and the interest of the party giving the notice. These things must necessarily be stated in any notice. Practically, this covenant calls for a demand only.

But, in any event, the demand, notice, and proof should be made within the period of limitations, or the demand is stale and suit cannot be maintained thereon. (*Meherin v. San Francisco etc. Exp.*, 117 Cal. 215; *Thomas v. Pacific etc. Co.*, 115 Cal. 136; *Williams v. Bergin*, 116 Cal. 56.)

In *Palmer v. Palmer*, 36 Mich. 487, which is a leading case upon this question, it is said: "He is really and in fact able at any time to bring an action when he can by his own act fix the time of payment. It is no stretch of language to hold that a cause of action accrues for the purpose of setting the statute in motion as soon as the creditor by his own act, and in spite of the debtor, can make the demand payable." This is, in my judgment, the true doctrine. Otherwise, the demand is in this condition: The cause of action has accrued if the creditor so wills, but if it suits his convenience its life will be prolonged indefinitely. The rule is put upon a different theory in *Bills v. Silver Min. Co.*, 106 Cal. 9, which, however, may work the same result. It is there practically said that the cause of action does not accrue until demand, but where demand can be made at any time it must be made within the period of the statute or the right of action is lost. This leaves undetermined

whether, if the demand is made within the period, the creditor has not the whole period allowed by the statute after demand. But I think that is not the doctrine of the decisions. In *Palmer v. Palmer, supra,* the rule is applied as though the statute is put in motion as soon as demand may be made. Otherwise, the creditor could, if he saw fit, add to the life of the contract a period equal to the statutory limitation. He cannot prevent the statute from running by failing to make the demand. (*Ball v. Keokuk etc. Ry. Co.,* 62 Iowa, 751.) Whenever he can, if he chooses, by the terms of the contract, commence an action, the cause of action has accrued, for the purposes of the statute. (*Great Western Tel. Co. v. Purdy,* 83 Iowa, 430; *Atchison etc. R. R. v. Burlingame,* 36 Kan. 628; 59 Am. Rep. 578.)

The order and judgment are affirmed.

Henshaw, J., and McFarland, J., concurred.