[Civ. No. 12067. Second Appellate District, Division One.—January 31, 1941.]

J. W. SHNELL, Appellant, v. GLOBE INDEMNITY COMPANY (a Corporation), Respondent.

Murchison & Clopton, Mort L. Clopton and Bruce Murchison for Appellant.

Eugene S. Ives, Harold L. Watt and Carol G. Wynn for Respondent.

YORK, P. J.—Appellant herein, the "named insured" in a policy of automobile liability insurance issued by respondent brought the instant action to recover the expense incurred by him in defending a suit for damages arising out of an auto-

mobile accident as well as the amount of a judgment rendered against him in such suit. At the conclusion of the trial, the court directed the jury to return a verdict for respondent. From the judgment entered pursuant thereto, this appeal is prosecuted.

Viewing the facts in the light most favorable to appellant, it appears that on January 8, 1936, appellant visited the office of Mr. Evans, an agent of Fidelity and Casualty Company of New York and the Niagara Fire Insurance Company of New York, and ordered a policy of insurance upon a Ford automobile, as well as upon a Packard automobile owned by him. About January 15th, the policies were prepared and forwarded to the agent, Mr. Evans, for delivery to appellant, but before delivery had been made, the insurance companies on or about February 26th, notified Mr. Evans that they would require on both policies, and also on a policy previously issued covering an Oldsmobile owned by appellant's daughter, endorsements suspending coverage whenever such automobiles should be operated by appellant's son, Rex Shnell. Upon being informed of this action by the companies, appellant agreed to such endorsement as to the Oldsmobile and the Packard, but declined the Ford policy on such terms. The Ford policy was never delivered to appellant, but was returned by the agent to the companies and marked "cancelled". No premium was ever collected therefor, nor was the policy ever countersigned by the agent.

On March 21, 1936, appellant visited the Santa Monica office of E. Broox Randall & Sons, Inc., a general agent of respondent Globe Indemnity Company, and discussed the subject of insurance upon the Ford automobile with Henry T. Brantly, a "soliciting agent" of respondent company.

For the purposes of this appeal, based as it is on a directed verdict, it must be assumed that appellant (as he testified) made a full disclosure to Mr. Brantly of the facts concerning his previous application to the Fidelity and Niagara companies, and their refusal to insure appellant's cars while they were being operated by his son Rex. At any rate, the outcome of this conversation was that Mr. Brantly filled out and appellant signed an application for insurance to become effective at noon of that day, the pertinent portion of such application being as follows:

"I warrant the following statements concerning my car and base this order thereon . . .

"Previous carrier   None.

"Any previous cancellations?   No. . . . "

On March 27, 1936, appellant's Ford automobile while being operated by his son, Rex Shnell, was involved in a collision resulting in the death of Rex and injury to the occupants of the other car. Respondent refused to defend the action brought against appellant, served notice of rescission and tendered him the amount of the premium, which appellant refused to accept.

The policy issued pursuant to the application contained among others the following provision:

"If consideration of the premium specified and the statements contained in the Schedule ·of Statements made part hereof, *and warranted by the insured to be true,* the Company agrees . . .

"Schedule of Statements . . .

"11. No company has cancelled any automobile policy of the Named Insured, or refused to issue automobile insurance to the Named Insured during the past year." (Italics added.)

There was no error on the part of the trial court in directing a verdict for respondent. While it must be assumed that appellant in his conversations with the agent Brantly made full disclosure of the facts concerning his previous application to the Fidelity and Niagara companies, the conceded facts are that when he executed an application for insurance whereby he warranted there had been no previous cancellations, he knew that such statement was not true. This is revealed by appellant's own testimony on cross-examination, when, after testifying concerning his procurement of two other policies on his Packard and Oldsmobile automobiles, he testified:

"Q. By Mr. Kidd: And on or about the same time, you were offered a policy by these same two insurers through E. J. Evans, covering this same Ford automobile with an endorsement on the policy to the same effect, that is, that that policy would not cover you or anyone else while that Ford automobile was operated by Rex Shnell, isn't that true? A. Mr. Evans advised me that the policy was written that way. Q. And you said what? A. I told him to return it;

I couldn't use it. Q. Why did you tell him that? A. I didn't want that kind of a policy. Q. You wanted one to cover Rex Shnell while he was driving the car? A. I wanted it to cover anyone. Q. Including your son? A. Yes. Q. And counsel has agreed that your son did drive that Ford automobile? A. Yes, at times. Q. Yes, at times. And at that time you refused that policy, did you? A. Yes. I told Mr. Evans to return the Ford policy. I couldn't use it. I didn't want that kind of a policy. I wanted it to cover anyone, including my son Rex Shnell. My son did drive that Ford automobile at times. At that time I refused that Ford policy. By that time I mean that my recollection is that the Ford policy was taken up some time before March 10th, but I am not sure. I am not sure of the date of the discussion with Mr. Evans on said notification from him about the Ford policy. I am speaking of the Ford policy. Whenever in my testimony I refer to the Ford automobile, I am referring to the same car that was later insured with the Globe Indemnity Company. Q. And you think you had a discussion with Mr. Evans prior to March 10, 1936— A. I had a notification— Q. Please wait until the question is finished. With reference to this Ford policy which had been issued by the Fidelity and Casualty Company and the Niagara Fire Insurance Company— A. I was notified that that was the case. Q. That notification is in writing? A. No, sir. . . . I didn't like to sign the rider on the Packard policy . . . limiting the policy so that it wouldn't cover Rex Shnell, but I took it. I signed the endorsement myself. I can't recall about the Oldsmobile. I never told the Globe Indemnity Company about that transaction, about the Oldsmobile policy and that the coverage on same had been amended so as not to apply to my son. I never discussed that with them. I never told the Globe Indemnity Company about that transaction, the Packard policy I am referring to, and that the coverage on the same had been amended so as not to apply to my son. I never saw any endorsement on the Ford policy. I never saw the policy at all. To my knowledge I never wrote a check in which the amount of premium on the policy on the Ford car was included in some other amount. Q. By Mr. Kidd: Did you tell the Globe Indemnity Company anything with reference to the driver's license of your son Rex Shnell having been revoked for one year or any other period . . . Did you ever tell Mr. Brantly about any of these matters I have been asking

you about, to-wit: that the Fidelity and Casualty Company had put a rider on your Oldsmobile policy, and the same kind of a rider on the Packard policy, to-wit: that the policy would protect neither of them while being driven by Rex Shnell? A. Not about the Oldsmobile, but in talking about the prior coverage, I told him something about the other. Q. Did you tell Mr. Brantly anything about your son's driver's license being revoked for a year or a year and a half? A. Yes, I discussed it with him. . . . Q. And you told him about what? A. He asked about prior coverage on the car and I told him that I had gone to another insurance company, another insurance agency, and they wanted to restrict the policy and I refused to take it and told them to return it."

With reference to appellant's contention that the policy ordered from the Fidelity and Casualty Company by him for the Ford automobile (which is relied upon by respondents to show previous insurance) never became effective because it was never delivered to him and was never countersigned, it should not be overlooked that appellant was thoroughly conversant with the insurance business, having been formerly engaged in that line for some thirty years, fifteen of which were spent in Southern California. That he considered the policy of the Fidelity and Casualty Company effective is confirmed by his statement, to wit: "On or about January 8 of 1936 I obtained insurance on this Ford automobile, and this insurance was cancelled about a month later without cause and without listing any cause for the cancellation. I had had no other insurance and had made no other application for insurance upon this car."

The Fidelity and Casualty Company of New York and the Niagara Fire Insurance Company also recognized an outstanding liability under this policy from the date of its issuance on January 8, 1936, until the date of cancellation on March 9, 1936, which is evidenced by a letter from Mr. Mc-Keegan, manager of the automobile department of such carriers, addressed to his Los Angeles office under date of February 26, 1936, to wit: "There has now come to our attention another policy for J. W. Shnell, number CA213055 effective January 8, 1936 covering a 1930 Ford Coupe. The investigation which the Fidelity and Casualty Company made indicates very clearly this Ford is the automobile which Rex Shnell operates. How this policy could have been sent to our office with the knowledge that the agent had of the objection

raised by the Fidelity and Casualty Company is something we cannot understand. Clearly, if this Ford Coupe is still operated by Rex Shnell, the policy will have to be returned for cancellation.''

In this 'case it must be held that the policy of insurance originally issued upon the Ford automobile, and in connection with which appellant refused to sign the rider, was both delivered and in effect up to the time of its cancellation after appellant declined to accept a rider thereto. Certainly there was constructive delivery, because the insurance carriers in sending the policy to their agent did not intend that he should keep it for them, but on the contrary he held it for the insured. This being the case, liability attached under the policy when it was forwarded from the home office. (*Hill* v. *Industrial Acc. Com.,* 10 Cal. App. (2d) 178, at 183, 184, 185 [51 Pac. (2d) 1126], and cases therein cited.)

It is well established that a directed verdict is proper, unless there is substantial evidence tending to prove, in favor of the party against whom the direction is given, all the controverted facts necessary to establish his case. (24 Cal. Jur. 913, 914, and authorities there cited.) A review of the record herein results in the conclusion that there is no evidence of sufficient substantiality to support a verdict in favor of appellant, if such a verdict were rendered.

We find no merit in appellant's contention that the trial court erred in receiving in evidence respondent's exhibits G, L, O and P.

For the foregoing reasons, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.