[Civ. No. 25181.   Second Dist., Div. Three.   Mar. 21, 1961.]

ARGONAUT INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and MAURO GARZA et al., Respondents.

* Assigned by Chairman of Judicial Council.

Herlihy & Herlihy and John L. Granger for Petitioner.

Everett A. Corten and Edward A. Sarkisian for Respondents.

NOURSE, J. pro tem.*—Petitioner seeks to annul an award of respondent commission which adjudged that a policy of workmen's compensation insurance issued by petitioner covered an industrial injury to an employee of the assured which

---

*Assigned by Chairman of Judicial Council.

took place more than 30 days prior to the issuance of the policy in question.

The essential facts are: Effective as of July 1, 1958, petitioner issued to a partnership known as Auto Salvage Company, hereinafter referred to as "the salvage company," a policy of workmen's compensation insurance covering the period from July 1, 1958, through June 30, 1959. (This is hereafter referred to as the "first policy.") In March 1959 this policy was cancelled for failure of the salvage company to comply with the terms of the policy relative to rendering payroll accounts to petitioner for the purpose of computing the premium. After the cancellation of this policy one Lindsay, who was an agent of petitioner and an agent for other insurance companies issuing policies of workmen's compensation insurance, unsuccessfully attempted to secure from other companies than petitioner, for the salvage company, a policy of workmen's compensation insurance.

On July 11th, one Garza, an employee of the salvage company, sustained an injury while in the scope and course of his employment. On that day Lindsay, through the attending physician, was notified of the injury and on the same day he wrote to the salvage company stating that he was unable to place workmen's compensation insurance for them and recommending that they contact another agent or the State Compensation Insurance Fund.

On or about the 19th of July he conferred with both members of the partnership (the salvage company). The partners did not ask that he procure insurance to have an effective date prior to its issuance and Mr. Lindsay did not bind the risk for petitioner or any other company. The following day Lindsay wrote to petitioner stating in substance that the salvage company was on a better financial footing and that he did not believe the petitioner would have the problems it had had (it had had at least three cancellations of coverage in the past) and asking "would you want to try them once more." He did not advise them in his letter of the injury to the applicant Garza but in conversations over the phone did advise the petitioner of that fact and was advised that the petitioner would only issue a policy from August 1, 1959, to August 1, 1960. On August 12th the company issued its policy 27421 (hereafter referred to as the "second policy") and mailed it to Lindsay who received it in due course of mail. This policy by its terms covered the period from July 1, 1959, to July 1, 1960. Upon receiving the policy Lindsay noted that the policy

had been predated to July 1st. He erased the date and the expiration date of July 1, 1960, and inserted in lieu thereof the dates August 1, 1959, and August 1, 1960. He then mailed the policy to the salvage company. The salvage company had no knowledge of a policy having been issued covering its risk for the month of July 1959 and, in fact, the only literate partner and the only one who testified before the commission testified that the new policy he received from petitioner started August 1st and was cancelled October 17th.

Upon making the changes in the policy, Lindsay immediately notified the petitioner of that fact and asked it to change its records accordingly. He was advised by petitioner's underwriter that, as the records of the policy had been made through the means of an electronic device, those records could not be altered and that petitioner would issue a policy to conform to the correct dates and requested Lindsay to return the original policy for "cancellation flat."[1] This Lindsay did not do but the company nevertheless issued another policy, hereinafter referred to as the "third policy," which had an effective date as of August 1, 1959 and expiration date of August 1, 1960.

Thereafter, petitioner billed the salvage company for the premium due it designating the policy under which it was due as the second policy and the period for which the premium was due as commencing on July 1, 1959. The premiums not being paid it turned the accounts for the premiums due it under the first policy and the premium under the second policy over to a collection agency. Thereafter and after it was made a party to the proceedings before the respondent commission it corrected its billing on the second policy to cover the period from August 1, 1959. The accounts turned over to the collection agency were for the premium in the sum of $435.14 on the first policy and the premium upon the second policy of $250.29 which included a premium for the month of July 1959 in the sum of $57.07. The salvage company paid to the collection agency all of the combined accounts except the sum of $100. The second policy was cancelled for nonpayment of premiums on October 17th and the third policy was cancelled flat on or about the same date.

The referee found that at the time Garza sustained his injury petitioner was the compensation carrier for the salvage company. The commission granted reconsideration and in so

---

[1] "Cancelled flat" means from its inception date and, therefore, without premium.

doing found there was no evidence that the salvage company was ever notified that a policy effective July 1, 1959, was issued or that it was ever notified that it was to be covered as of July 1, 1959. It, therefore, directed that further testimony as to these two matters be taken before the referee. Further hearing was had before the referee but no evidence was produced upon the issues we have just stated.

The commission then issued its order affirming the findings and award made by the referee except as to a matter not relevant here; giving as its reasons, for affirming the findings, that petitioner was the compensation carrier of the partnership at the time of the injury to Garza; that (1) petitioner was estopped to deny coverage, and (2) that there had been a constructive delivery of the second policy.

We have reached the conclusion that there is not substantial evidence to uphold the finding that petitioner was the compensation insurance carrier of the salvage company at the time that the accident in question occurred.

The commission's finding that there was a constructive delivery of the second policy is in reality a false issue here based upon the misconception by the commission of the evidence as to delivery. The uncontradicted evidence was that after the second policy had been corrected by Lindsay it was delivered as corrected to the salvage company and that the third policy was never delivered. Inasmuch as there was an actual delivery of the policy, the fact that the commission found a constructive rather than actual delivery is of no moment but the question remains, what contract of insurance was delivered. In order that there may be a contract of insurance there must, as in any other contract, be a meeting of the minds of the parties. (*Vyn* v. *Northwest Casualty Co.,* 47 Cal.2d 89, 94 [301 P.2d 869] ; *Boyer* v. *United States F. & G. Co.,* 206 Cal. 273, 276 [274 P. 57] ; Couch on Insurance, vol. 1, § 2 :12, p. 113 at n. 15.)

The evidence is undisputed here that the salvage company did not request of petitioner a policy of insurance coverage in which the effective date would be antedated so as to cover a loss which had already occurred and the evidence is further uncontradicted that they had no knowledge that petitioner had placed in the hands of its agent an antedated policy. The effect of petitioner's sending to its agent a policy covering a period for which insurance had not been requested by the assured was to make a counteroffer, but as this offer was never made to the insured by petitioner's agent, it was of

course not accepted and no contract resulted insuring salvage company as to any risk occurring prior to August 1st.

The fact that petitioner could not change its record so as to show the correction in its policy made by its duly authorized agent does not turn the contract actually delivered to the assured into a different contract from that shown on the face of the policy as delivered and accepted by the assured.

Counsel for the respondent in their briefs make much of the fact that the underwriting manager of the company testified that, as of August 1, 1959, the company had two policies in operation, i.e., the second and third policies above mentioned. We cannot see that this testimony upholds the finding in question. In the first place it is but a conclusion of the witness as to the effect of the actions taken by the company and in the second place there is nothing in the evidence which would support a conclusion or any inference other than that the third policy was issued in an abortive attempt to substitute it for the policy delivered and, as neither the second policy as delivered to the assured or the third policy, covered the period during which the accident in question occurred, it is entirely immaterial whether the second or third policy, or both, became effective.

It is a general rule that where a policy is mailed by an insurer to its agent for delivery to the assured that delivery is complete when the policy is placed in the mail directed to the agent. (Civ. Code, §§ 1059, 1627; *Harrigan* v. *Home Life Ins. Co.*, 128 Cal. 531, 543 [58 P. 180, 61 P. 99]; *Courdway* v. *Peoples Mut. Life Ins. Co.*, 118 Cal.App. 530, 533 [5 P.2d 453]; *Paez* v. *Mutual Indem. etc. Ins. Co.*, 116 Cal.App. 654, 657 [3 P.2d 69]; *Shnell* v. *Globe Indemnity Co.*, 42 Cal.App. 2d 704, 709 [109 P.2d 1018].) But whether a delivery to an agent of the insurer constitutes a constructive delivery to the assured depends upon the intention of the parties. (*Hill* v. *Industrial Acc. Com.*, 10 Cal.App.2d 178, 184 [51 P.2d 1126]; *Bloom* v. *Pacific Mut. Life Ins. Co.*, 85 Cal.App. 419, 429 [259 P. 496]; *Paez* v. *Mutual Indem. etc. Ins. Co.*, *supra*, pp. 657-658; *Harrigan* v. *Home Life Ins. Co.*, *supra*, p. 546; *Jefferson Standard Life Ins. Co.* v. *Munthe* (9th Cir.), 78 F.2d 53; *Reese* v. *American National Ins. Co.* (5th Cir.), 175 F.2d 793.) Where a policy is delivered to the insurer's agent without the knowledge of the insured and it cannot constitute a contract between the parties until accepted by the assured, the rule cannot apply. Where the policy sent to the agent of the insurer differs from the one applied for as in the

case here, the delivery is not effected by mailing it to the agent and the policy still remains in the control of and in the possession of the company. (Couch on Insurance, vol. 1, § 10 :29, p. 10.27; *Williams* v. *Philadelphia Life Ins. Co.*, 112 S.C. 436 [100 S.E. 157]; *Mutual Life Ins.* v. *Young* (1875), 23 Wall. (U.S.) 85-108 [23 L.Ed. 152]; see also Rest., Contracts, § 64, illus. 2; *Gandelman* v. *Mercantile Ins. Co. of America* (9th Cir.), 187 F.2d 654, 656, 657; *Morford* v. *California Western States Life Ins. Co.*, 166 Ore. 575 [113 P.2d 629, 635]; Appleman, Insurance Law and Practice, vol. 1, § 142, p. 145, at n. 1.)

▉▉▉ The finding and award cannot be supported upon the theory of promissory estoppel. There is no basis to invoke that principle, for no promise or representation was made and as the salvage company had no knowledge whatsoever of the issuance of policy number two it could not have relied thereon. (*Bard* v. *Kent*, 19 Cal.2d 449 [122 P.2d 8, 139 A.L.R. 1032]; 18 Cal.Jur.2d 407; Rest., Contracts, § 90.)

▉▉▉ Nor is there any basis in the evidence for an equitable estoppel *in pais*. "Four things are essential to the application . . . of equitable estoppel. They are:

"1. There must have been a misrepresentation or concealment of the matters of fact as to which the estoppel is claimed;

"2. The party to be estopped must intend that the other party act upon the assumption of the truth of that fact;

"3. The party claiming the estoppel must be ignorant of the true facts;

"4. He must rely to his injury upon the conduct of the party to be estopped." (*Banco Mercantil* v. *Sauls Inc.*, 140 Cal.App.2d 316, 323 [295 P.2d 55].)

▉▉▉ Here all the elements of equitable estoppel are lacking. There was no misrepresentation or concealment, and no reliance by the salvage company upon any conduct of the petitioner. It must be remembered that the loss, i.e., the accident, which the commission found the petitioner was estopped to deny that it covered by its policy had occurred before there was any application for the policy and before the policy had issued; that the salvage company did not apply for antedated coverage nor was there any promise to it that such a policy would issue and it had no knowledge of the issuance of such a policy. It could not, nor did it, act in any manner or fail to act because of any reliance upon any promise or representation or upon the belief that it had insurance covering the risk and it sustained no loss by reason of any act or omission of petitioner.

400

The fact, so strongly relied upon by respondent, as creating the estoppel which it found to exist, that petitioner had billed the salvage company for premiums covering the month of July could not give rise to an estoppel for the salvage company did not act and could not have acted to its detriment because of such billing. The facts show that it has not paid the premium so billed. (See *Gandelman* v. *Mercantile Ins. Co. of America, supra,* 187 F.2d 654.)

Respondent relies upon *Hill* v. *Industrial Acc. Com., supra,* 10 Cal.App.2d 178, in support of its contentions of a delivery of the second policy, as originally written, and of an estoppel. It is not in point upon either proposition. As to delivery the evidence in Hill showed that the policy applied for by Hill had been delivered to the insurer's agent and was held by him at the request of Hill and no question of estoppel was involved nor discussed by the court.

The award is annulled.

Shinn, P. J., and Vallée, J., concurred.