[No. A040464. First Dist., Div. Five. Jan. 31, 1989.]

FRANK A. SYLVA et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF LAKE COUNTY et al.,
Defendants and Respondents.

**COUNSEL**

Cameron L. Reeves for Plaintiffs and Appellants.

Crump, Bruchler & Crump, Bruce B. Bruchler and William R. Edgar for Defendants and Respondents.

**OPINION**

**KING, J.**—In this case we are called upon to determine whether proponents of a referendum petition collected the requisite number of signatures to suspend the adoption of a county ordinance and force the legislative body to either reconsider the ordinance or submit it to the voters for approval. We are asked by plaintiffs, the proponents of the referendum petition, to interpret the requirement set out in Elections Code section 3753[1] that the petition contain "10 percent of the entire vote cast within the county for all candidates for Governor at the last gubernatorial election" to validate a petition containing 10 percent of the votes cast at a gubernatorial *primary*. Defendants, who prevailed below, insist that the basic figure from which the requisite number of signatures must be computed can only be the entire vote cast at the last gubernatorial *general* election. We concur with this latter interpretation and affirm.

The facts are not contested. On October 14, 1986, Board of Supervisors (hereinafter Board) duly adopted a revised zoning ordinance. The ordinance was to become effective on November 13, 1986, 30 days after it was adopted, unless a referendum petition satisfying the requirements of section 3753 was presented to the county clerk prior to the effective date of the ordinance. A valid referendum petition fulfilling the technical requirements of section 3753 would suspend enforcement of the zoning ordinance until the Board decided whether to repeal the ordinance or submit it to the voters for approval. (See §§ 3753, 3754; *Kuhs* v. *Superior Court* (1988) 201 Cal.App.3d 966, 971 [247 Cal.Rptr. 544].) On November 4, 1986, before the 30-day deadline expired, a referendum petition protesting the adoption of the ordinance was filed with the county clerk's office pursuant to section 3753.

The county clerk found there were 1,335 valid signatures on the petition which was a number equal to at least 10 percent of the entire vote cast for gubernatorial candidates at the last election held in Lake County, which was a gubernatorial *primary* election. The last gubernatorial *general* elec-

---

[1] Unless otherwise indicated, all further statutory references are to the Elections Code.

tion that preceded the filing of the referendum petition was the November 1982 General Election at which time 16,654 votes were cast in Lake County for all candidates for Governor. Ten percent of that vote equates to a requirement of 1,665 signatures for a valid referendum petition pursuant to section 3753. Plaintiffs admit that the referendum petition does *not* contain signatures equal in number to 10 percent of the entire vote cast for all candidates for Governor at the last gubernatorial general election.

On November 25, 1986, the Board determined that, in spite of the referendum petition that had been filed, it was not necessary to repeal the ordinance or to submit it to the voters for approval. Its decision was based, in pertinent part, on the conclusion that plaintiffs' referendum petition did not comply with section 3753 because it did not contain 10 percent of the entire vote cast within the county for all candidates for Governor at the last gubernatorial *general* election. Plaintiffs filed a writ of prohibition claiming the referendum petition contained the requisite number of signatures under section 3753 because the statute did not make a distinction between a primary and general election; hence, plaintiffs sought suspension of the revised zoning ordinance until it was submitted to the voters and approved pursuant to section 3754.

The trial court denied plaintiffs any relief based on its conclusion that the petition did not contain enough signatures to meet the requirements of section 3753. The trial court construed the phrase "last gubernatorial election" in section 3753 to mean the last gubernatorial *general* election. The trial court reasoned that the "last gubernatorial election" could not possibly include a primary election "since a primary, with respect to the Governor merely nominates candidates for that office, whereas a general election elects a person to that office."

■ Central to the resolution of this appeal is a construction of the requirement that the petition "be signed by voters of the county equal in number to at least 10 percent of the entire vote cast within the county for all candidates for Governor at the last gubernatorial election." (§ 3753.) Within the framework of the opposing constructions of section 3753, if we construe the statute as requiring the petition contain signatures of 10 percent of the voters at the last gubernatorial *general* election, then the court below properly found the referendum petition to be invalid, and the zoning ordinance should become law. However, if we construe the statutory framework to include gubernatorial *primaries as well as general* elections, the referendum petition contained a sufficient number of signatures to suspend the effect of the zoning ordinance until the issue can be resolved by the voters. This is an issue of first impression.

In arguing for the more expansive interpretation, plaintiffs principally rely on the statutory definition of the word "election" contained in section 19. This definition sets out that "election," as used in the Elections Code, means "any election including a primary." However, we believe it would be a mistake to focus solely on the word "election" in section 3753 and the statutory definition of "election" found in section 19, and ignore the context in which the word is used. The Elections Code itself warns that "[u]*nless the provision or the context otherwise requires,* these . . . [statutory] definitions shall govern the construction of this code." (§ 4, italics added.) ■ This admonition conforms to a fundamental rule of statutory construction that "[i]n interpreting particular words, phrases, or clauses in a statute, 'the entire substance of the statute or that portion relating to the subject under review should be examined in order to determine the scope and purpose of the provision containing such words, phrases, or clauses.'" [Citation omitted.] (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749], revd. on other grounds in *Frink* v. *Prod* (1982) 31 Cal.3d 166, 180 [181 Cal.Rptr. 893, 643 P.2d 476].) ■ Consequently, we find it imperative that the term "election" be construed in context in light of the statute's legislative history and purpose.

The origins of section 3753 can be traced to former Political Code section 4058 as enacted and amended at an extra session in 1911. In pertinent part, that section required a referendum petition be signed "by qualified electors of the county equal to ten percent of the entire vote cast therein for all candidates for Governor of the state at the *last preceding general election* at which a Governor was voted for." This statutory definition obviously does not include a gubernatorial primary. In 1939 the Legislature passed "An act to establish an Elections Code, thereby consolidating and revising the law relating to elections . . . ." (1939 Stats., ch. 26, p. 49.) In setting out the requirements for a valid referendum petition, the new Elections Code eliminated the reference to a "general election" and adopted the language presently under review herein. It required the petition contain "at least 10 percent of the entire vote cast within the county for all candidates for Governor at the *last gubernatorial election.*" (Former § 1652, § 3753.)

Plaintiffs argue the Legislature's deletion of any reference to a "general election" in the newly-enacted section 3753 indicated an intent to change the original act to allow the requisite number of signatures to be calculated with reference to a gubernatorial primary as well as a gubernatorial general election. In countering this argument, defendants insist that this change in language was merely an effort to restate the substance of the existing law more concisely, and it was not intended to affect or substantially change the requirements set out in former Political Code section 4058. The general provisions of the Elections Code itself sheds some light on this controversy.

Section 2 stresses that "[t]he provisions of this code, insofar as they are substantially the same as existing statutory provisions relating to the same subject matter, shall be construed as restatements and continuations, and not as new enactments."

Moreover, defendants' contention that the Legislature did not intend to change the substance of the former law is reinforced by an examination of the history of an analogous provision of California's Constitution relating to the right of initiative at the state level. Article II, section 8, as revised in 1966, provides that an initiative measure may be proposed by presenting a petition containing a requisite number of signatures based upon "the votes for all candidates for Governor at the *last gubernatorial election.*" (Italics added.) This language parallels the language currently used in section 3753. The predecessor to article II, section 8, required a valid initiative petition contain a number of signatures based upon a percentage "of all the votes cast for all candidates for Governor at the *last preceding general election, at which a Governor was elected.*" (Former art. IV, § 1, italics added.) This language essentially mirrors the language used in former Political Code section 4058, the predecessor to section 3753. In determining whether the 1966 constitutional revisions resulted in any substantive change, our Supreme Court has emphasized that the revision "was intended solely to shorten and simplify the Constitution, . . . [and] did not enact any substantive change in the power of the Legislature and the people." (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 595, fn. 12 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]; *Ortiz* v. *Board of Supervisors* (1980) 107 Cal.App.3d 866, 871 [166 Cal.Rptr. 100].)

The legislative history and language of section 3753 and article II, section 8, parallel one another, requiring a similar interpretation. ■ "In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read together in order to achieve a uniform and consistent legislative purpose." (*B. W.* v. *Board of Medical Quality Assurance* (1985) 169 Cal.App.3d 219, 231 [215 Cal.Rptr. 130].) ■ In light of the foregoing analysis, it is readily ascertainable that the Legislature did not intend to change the requirement that a valid referendum petition contain signatures representing 10 percent of the vote cast at the last gubernatorial general election and that the new wording in section 3753 merely changed the form, without changing the substance, of the numerical requirement as formerly stated in the Political Code.

In addition to legislative history, well-settled principles of statutory construction lead us to conclude that "last gubernatorial election" as used in section 3753 cannot be construed to include a gubernatorial primary.

■ First, the language in one section of a statute should be construed consistently with language of other sections. (*West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 607-608 [86 Cal.Rptr. 793, 469 P.2d 665].) In section 6430 the words "last preceding gubernatorial election" clearly refer to the last gubernatorial general election because a "primary election" is also referred to in the statute and construed differently. It follows that the Legislature ascribed different meanings to these two terms.

■ Secondly, the court must consider the consequences that might flow from a particular construction and should construe the statute so as to promote rather than defeat the statute's purpose and policy. (*Fig Garden Park No. 2 Assn.* v. *Local Agency Formation Com.* (1984) 162 Cal.App.3d 336, 342 [208 Cal.Rptr. 474].) ■ The referendum process allows the voters to veto statutes and ordinances duly enacted by their elected legislative bodies before those laws become effective. (*Referendum Committee* v. *City of Hermosa Beach* (1986) 184 Cal.App.3d 152, 157 [229 Cal.Rptr. 51].) While courts have described the referendum as articulating "one of the most precious rights of our democratic process," (*Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d at pp. 591-592), it has also been acknowledged that subjecting legislation to a vote by the people can seriously disrupt essential governmental functions. (See *Geiger* v. *Board of Supervisors* (1957) 48 Cal.2d 832, 839-840 [313 P.2d 545].) It stands to reason that before the voters of the state are allowed to bypass the lawmaking power of their elective bodies, the referendum measure should have a wide base of public support. We fail to see how validating a referendum petition containing 10 percent of the votes cast at a gubernatorial *primary,* as urged by plaintiffs, would be in harmony with this objective. ■ Primaries do not embrace the whole electorate, and only those affiliated with an established political party are allowed to participate in selecting their party's candidate for Governor. (See 28 Cal.Jur.3d (rev.) Elections, § 1, pp. 452-453.) Consequently, it makes logical sense to require that no less than 10 percent of the *entire electorate* who voted at the last gubernatorial *general* election support a referendum measure before the legislative process can be subverted.

Because we hold the Board's position prevails on the issue of the number of signatures required under section 3753, we need not address their additional contention asserting that a successful referendum petition would result in an invalid zoning scheme.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.