[No. C008346. Third Dist. May 29, 1991.]

WILLIAM HOLCOMB, Plaintiff and Respondent, v.
HARTFORD CASUALTY INSURANCE COMPANY, Defendant and
Appellant.

**COUNSEL**

Greve, Clifford, Diepenbrock & Paras, Gerard A. Rose, Suzanne L. Small and Irving H. Perluss for Defendant and Appellant.

Dreyer, Babich & Buccola and Joseph J. Babich for Plaintiff and Respondent.

## OPINION

**PUGLIA, P. J.**—This is an appeal from a judgment in an action for declaratory relief, the impetus for which was an automobile accident. Plaintiff, William Holcomb, sought a declaration of his rights under the uninsured motor vehicle provisions of an insurance policy issued him by defendant, Hartford Casualty Insurance Company (Hartford). ▉ ▉ The trial court concluded Hartford was obligated to pay full coverage without reduction for amounts paid to plaintiff on behalf of an underinsured motorist or for amounts paid to plaintiff under the medical expense portion of the policy. On appeal, Hartford contends these reductions are authorized respectively by Insurance Code section 11580.2, subdivision (p)(4) and its policy. We conclude Hartford is correct with respect to amounts paid plaintiff on behalf of an underinsured motorist but not with respect to amounts paid plaintiff under the medical expense coverage of plaintiff's policy.

The facts are undisputed. On January 3, 1987, plaintiff was injured when a vehicle in which he was a passenger was involved with another vehicle in an accident. The vehicle carrying plaintiff was insured by Montgomery Ward Insurance Company (Montgomery Ward) under a policy with a bodily injury limit of $50,000. The other vehicle was uninsured. The drivers of the two vehicles are concurrent tortfeasors, each a legal cause of the accident.

At the time of the accident, plaintiff was insured by Hartford under a policy issued in July 1986 providing uninsured motorist coverage up to a limit of $60,000. Both the Hartford and Montgomery Ward policies also provided coverage for medical expenses up to a limit of $5,000.

Montgomery Ward paid plaintiff its policy limits of $50,000 for bodily injury and $5,000 for medical expenses. Hartford paid plaintiff $5,000 under its medical expenses coverage. Hartford also paid plaintiff $10,000 under its uninsured motor vehicle coverage, representing the $60,000 limit of liability for bodily injury reduced by the $50,000 plaintiff had received from Montgomery Ward. Plaintiff initiated this action against Hartford to obtain a declaration of his right to the full $60,000.

The trial court concluded Hartford was not entitled to reduce plaintiff's recovery under its policy by either the $50,000 paid by Montgomery Ward or the $5,000 in medical benefits which Hartford paid plaintiff. The court entered judgment declaring plaintiff's right to the full policy limits under the uninsured motor vehicle provisions of Hartford's policy, contingent upon proof of uncompensated damages in at least that amount.

I

Unless otherwise agreed in writing, "[e]very policy of auto insurance issued in this state must provide uninsured motorist coverage equal to or greater than that required by Insurance Code section 11580.2." (*Government Employees Ins. Co.* v. *Oliver* (1987) 192 Cal.App.3d 12, 16 [237 Cal.Rptr. 174], fn. omitted; further statutory references to sections of an undesignated code are to the Insurance Code.) Section 11580.2, subdivision (b) defines "uninsured motor vehicle" to include one with respect to which there is no bodily injury liability insurance, and one which is "underinsured" as defined in subdivision (p) of that section. Section 11580.2, subdivision (p)(2) defines an "underinsured motor vehicle" as one "insured for an amount that is less than the uninsured motorist limits carried" by the injured person.

Part C of plaintiff's Hartford insurance policy provides uninsured motor vehicle coverage up to a limit of $60,000. As does section 11580.2, the policy defines an "uninsured motor vehicle" to include one to which no liability policy applies and also to include an "underinsured motor vehicle" which is further defined as one to which a liability policy applies the limits of which are less than those for "this coverage."[1]

There are certain relevant "Limits of Liability" to the coverage under part C: For uninsured motor vehicle coverage, "any amounts otherwise payable for damages under this coverage shall be reduced by all sums: [¶] 1. Paid because of the bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible . . . ;" for underinsured motor vehicle coverage, "the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."

Section 11580.2, subdivision (g) permits an insurer paying a claim for uninsured motor vehicle coverage "to be subrogated to the rights of the insured to whom the claim was paid against any person legally liable for the injury or death to the extent that payment was made."[2] Under this right of subrogation the insurer purportedly receives credit for amounts paid the

---

[1]Notwithstanding the inclusive definitional language of section 11580.2 and the policy, hereafter we shall refer to motor vehicles not covered by a liability policy as "uninsured motor vehicles" and those so covered but with limits of liability less than those of the injured party's uninsured motor vehicle coverage as "underinsured motor vehicles." Persons legally responsible for damages caused by such vehicles will be referred to respectively as "uninsured motorists" and "underinsured motorists."

[2]The policy provides for subrogation of the insurer to the rights of the insured against any uninsured motorist and requires the insured to hold in trust and reimburse to the insurer all sums received from or on behalf of an underinsured motorist.

insured by or on behalf of legally liable third parties. However, court of appeal decisions have found this provision inconsistent with the general coverage provision in section 11580.2, subdivision (a) and have denied credit.

In *Security Nat. Ins. Co.* v. *Hand* (1973) 31 Cal.App.3d 227 [107 Cal.Rptr. 439], the Court of Appeal considered the right of subrogation in subdivision (g) of section 11580.2. The litigation was occasioned by a three car accident in which the drivers of two of the vehicles were concurrently responsible legally for injuries to the victims in the third car. One of the legally responsible vehicles was insured for up to $30,000 and the other was uninsured. The victims, whose damages exceeded $60,000, were insured under a policy providing uninsured motorist coverage up to a limit of $30,000. The victims' insurer argued it owed nothing to the victims because, even if it paid the $30,000 limits of its policy, it would be subrogated to the $30,000 received from the insurer of one of the legally responsible vehicles. The Court of Appeal disagreed, concluding that in these circumstances the right of subrogation in subdivision (g) of section 11580.2 conflicted with subdivision (a) of that section which requires an insurance policy to provide coverage " 'for all sums . . . which [the insured] . . . shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle.' " (31 Cal.App.3d at p. 231.) Even though a concurrent tortfeasor was insured, the uninsured motorist was still jointly and severably liable for *all* the victims' injuries. To the extent subdivision (g) of section 11580.2 purports to reduce the victims' rights to recover for *all* their injuries, it does not do so "conspicuously, plainly and clearly." (*Id.* at p. 236.) In order to vindicate a victim's reasonable expectations of recovery the court concluded the subrogation right should not apply until the victim had been made whole. (*Id.* at pp. 235-236.)

In *California State Auto. Assn. Inter-Ins. Bureau* v. *Huddleston* (1977) 68 Cal.App.3d 1061 [137 Cal.Rptr. 690], this court considered a similar claim. The decedent, a passenger in an insured motor vehicle, was killed when that vehicle collided with an uninsured motor vehicle. The insurer of the vehicle in which the decedent was riding paid the plaintiffs the $15,000 policy limits, and the plaintiffs sought coverage under an uninsured motor vehicle provision in a policy covering the decedent which also had liability limits of $15,000. The plaintiffs' damages exceeded $30,000. Relying on *Hand*, we concluded the plaintiffs were entitled to recover the full amount of uninsured motor vehicle benefits without reduction for amounts received from the insurer of the insured vehicle. (See also *Government Employees Ins. Co.* v. *Oliver, supra,* 192 Cal.App.3d at p. 21; *United Pacific-Reliance Ins. Companies* v. *Kelly* (1983) 140 Cal.App.3d 72 [189 Cal.Rptr. 323].)

 Hartford argues *Hand* and *Huddleston* do not control here because the accident involved an *underinsured*, as distinct from an *uninsured*, motor vehicle.[3] According to Hartford, paragraph (4) of subdivision (p) of section 11580.2 permits a reduction in benefits whenever an underinsured motor vehicle is a cause of the plaintiff's injuries. Moreover, Hartford points out that subdivision (p) was added to section 11580.2 in 1984 after the decisions in *Hand* and *Huddleston*, and applies to all policies such as this one which were issued or renewed after July 1, 1985. Plaintiff argues paragraph (4) of section 11580.2, subdivision (p) does not even apply here because he is claiming recovery under the uninsured, not the underinsured, motor vehicle coverage.

The introductory sentence of subdivision (p) of section 11580.2 reads: "This subdivision applies only when bodily injury, as defined in subdivision (b), is caused by *an underinsured* motor vehicle. If the provisions of this subdivision conflict with subdivisions (a) through (o), the provisions of this subdivision shall prevail." (Italics added.) Where section 11580.2, subdivision (p) applies, its paragraph (4) permits a reduction in the limits of liability of underinsured motor vehicle coverage for amounts received from other responsible parties. It reads: "When bodily injury is caused by one or more motor vehicles, whether insured, underinsured, or uninsured, the maximum liability of the insurer providing the underinsured motorist coverage shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury."

Plaintiff concedes paragraph (4) of section 11580.2, subdivision (p) permits a reduction where bodily injury is caused by an underinsured motor vehicle alone. However, plaintiff argues that when more than one driver, at least one of whom is uninsured, is legally responsible for the injury, he is entitled to resort to the uninsured motor vehicle coverage of his policy and, applying the rules of *Hand* and *Huddleston*, that coverage cannot be reduced for amounts paid on behalf of an insured tortfeasor.

Considered in isolation, the introductory sentence of section 11580.2, subdivision (p) is ambiguous as to that subdivision's applicability or not to a multiple vehicle accident. It could be interpreted to apply only when the injury is caused "exclusively" by an underinsured motor vehicle. It could also be interpreted to apply when, as here, at least one of two or more legally responsible motorists is underinsured.

---

[3]Because the Hartford policy had a $60,000 limit for uninsured motor vehicle coverage and the Montgomery Ward policy had only a $50,000 limit, the motor vehicle insured by Montgomery Ward was *underinsured*, as defined in section 11580.2, subdivision (b) and the policy.

Normally, ambiguous insurance statutes are to be construed to carry out the objective of providing coverage. (*Travelers Ins. Co.* v. *Bouzer* (1974) 39 Cal.App.3d 992, 995 [114 Cal.Rptr. 651].) Any provision purporting to limit coverage must be " 'conspicuous, plain and clear.' " (*Security Nat. Ins. Co.* v. *Hand, supra* 31 Cal.App.3d at p. 232.) Here, however, the introductory sentence of section 11580.2, subdivision (p) is ambiguous only when isolated from its context. Any ambiguity in that sentence is resolved in paragraph (4) of subdivision (p) which begins: "When bodily injury is caused by one or more motor vehicles, whether insured, underinsured, or uninsured . . . ." Thus, subdivision (p) includes a multiple vehicle scenario with concurrent tortfeasors at least one of whom must be underinsured. If, as plaintiff urges, we were to read section 11580.2, subdivision (p) as inapplicable whenever one of several legally responsible motorists is uninsured, we would render meaningless the reference to uninsured vehicles in paragraph (4) of subdivision (p). Under plaintiff's interpretation, when two or more motorists, one of whom is uninsured and one of whom is underinsured, are concurrently legally responsible for injury to a third party, the injured party is entitled to uninsured benefits unreduced by right of subrogation.

In matters of statutory construction, significance should be given, where possible, to every word of a statute and any construction which renders a word surplus should be avoided. (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) The interpretation of subdivision (p) of section 11580.2 urged by plaintiff renders surplus the word "uninsured" in that subdivision's paragraph (4). In order to give meaning to paragraph (4) of section 11580.2, subdivision (p) as written, we construe subdivision (p) to apply to a multiple vehicle accident whenever at least one legally responsible motorist is underinsured notwithstanding that another legally responsible motorist is uninsured.

We recognize this construction results in an anomaly in cases like this. An insured who is injured by both an insured and an uninsured motor vehicle can recover for his damages up to the limits of his uninsured motor vehicle coverage without reduction for recovery from the insured motorist. However, an insured who is injured by both an underinsured and an uninsured motor vehicle, by virtue of section 11580.2, subdivision (p)(4), can recover no more than the limits of his underinsured motorist coverage reduced by the amount paid on behalf of the underinsured motorist.[4] This anomaly is one created by the Legislature which, when it enacted subdivision (p), presum-

---

[4]This distinction is explicit in the Hartford policy which provides as limits to liability under coverage C: For uninsured motor vehicle coverage, "*any amounts otherwise payable for damages* under this coverage shall be reduced by all sums: [¶] 1. Paid because of the bodily injury or property damage by or on behalf of persons or organizations who may be legally

ably was aware of the decisions in *Hand* and *Huddleston*, and expressly provided that the provisions of subdivision (p), if in conflict with subdivisions (a) through (o) of section 11580.2, shall prevail. Thus we are not required as was the court in *Hand* to resolve inconsistencies between the various subdivisions of section 11580.2 which would otherwise be relevant to this appeal, because to the extent such inconsistencies exist, the Legislature has subordinated them to the provisions of subdivision (p). Our task is to interpret the law, not rewrite it. In order to give effect to section 11580.2, subdivision (p), as written, we conclude Hartford is entitled to credit the $50,000 paid by Montgomery Ward against plaintiff's underinsured motor vehicle coverage.

## II

■ Hartford contends it is entitled to deduct from underinsured motorist benefits the $5,000 it paid to plaintiff under part B of its policy for "Medical Payments Coverage." Part B obligates Hartford to pay "reasonable expenses incurred for necessary medical and funeral services." Under the "Limits of Liability" section of part B, "[a]ny amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for *the same expense* under . . . Part C [uninsured motorist]." (Italics added.) Hartford contends "the same expense" refers to bodily injury in general, thereby entitling it to credit against part B coverage for all amounts paid in underinsured motorist benefits.

Plaintiff counters that "the same expense" refers to a particular item of medical costs and, because his medical expenses exceed coverage under both part B and part C, the $5,000 payment was for expenses other than those covered by the underinsured motorist benefits. Plaintiff further contends the limit of liability provision in part B is inapplicable here because, instead of seeking a reduction in benefits payable under part B, Hartford is seeking a reduction in part C benefits, for which no comparable provision exists. We agree with plaintiff on both points.

"[A]ll ambiguities in an insurance policy are construed against the insurer-draftsman." (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 102 [109 Cal.Rptr. 811, 514 P.2d 123].) Coverage clauses are interpreted broadly while exclusionary clauses are interpreted narrowly. (*Id.* at pp. 101-102.) "[T]he meaning of an insurance policy is to be ascertained according to the insured's reasonable expectation of coverage, and all doubts as to

responsible . . . [italics added];" for underinsured motor vehicle coverage, "the *limit of liability shall be reduced* by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible." (Italics added.)

the meaning are to be resolved against the insurer. [Citations.]" *(Century Bank v. St. Paul Fire & Marine Ins. Co.* (1971) 4 Cal.3d 319, 321 [93 Cal.Rptr. 569, 482 P.2d 193].)

By using the singular of "expense," it is clear Hartford intended the part B limitation to cover a particular item of expense, such as the cost of an operation or other treatment. However, to the extent this term is ambiguous, the foregoing principles require us to adopt an interpretation which provides the greatest coverage. This would be the interpretation urged by plaintiff.

But even accepting the broad interpretation suggested by Hartford, this provision cannot serve as the basis for reducing the amount of underinsured benefits payable. The above provision permits the reduction of part B medical benefits by amounts paid or payable in uninsured benefits, not vice versa. Because maximum benefits have already been provided under part B, this provision is no longer applicable. Instead we must look to part C or the general provisions of the policy.

As previously indicated, the "Limit of Liability" section of part C permits reduction of the upper limit of underinsured benefits for amounts paid for bodily injury by those legally responsible. Expressly included are payments by defendant under the general liability coverage in part A of the policy. However, no similar provision exists for payments under part B.

Part F of the policy contains general provisions. Under the "Right to Recover Payment" section of this part, paragraph A grants the insurer a right of subrogation to the extent of payments made under the policy. Even if this provision could be construed to permit a reduction in benefits paid or payable under one part of the policy for payments made under another part, a later amendment to the policy expressly eliminated such right of subrogation to the extent of payments made under part B. To permit subrogation to the extent of payments made under part C for payments made under part B would effectively frustrate this amendment. Thus, the trial court properly held Hartford is not entitled to reduce the amount owed under part C for payments made under part B.[5]

To the extent the judgment declares plaintiff is entitled to recover the full $60,000 of uninsured motor vehicle coverage, it is reversed. In all other respects the judgment is affirmed. The matter is remanded with directions to

---

[5]Because Hartford has not claimed credit for the $5,000 of medical benefits paid by Montgomery Ward, we need not consider whether this amount could have been credited against uninsured motor vehicle benefits.

enter judgment in accordance with this opinion. The parties are to bear their own costs on appeal.

Sims, J., and Raye, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 28, 1991. Mosk, J., was of the opinion that the petition should be granted.