[No. S052682. Feb. 20, 1997.]

MARY RUTH ESCOBEDO, Plaintiff and Appellant, v.
ESTATE OF DANNY G. SNIDER, Defendant and Respondent.

COUNSEL

Rozanski & Friedland, W. Michael Workman and Matthew Tobias Surlin for Plaintiff and Appellant.

Russell Iungerich, Michaelis, Montanari & Johnson, Garry L. Montanari and Michael D. Pilla for Defendant and Respondent.

Coddington, Hicks & Danforth, Clinton H. Coddington, Richard G. Grotch, Kenney & Markowitz, Stephen C. Kenney, George M. Moore, Walsh, Donovan, Lindh & Keech, Neil B. Klein, Rosenman & Colin, Franklin F. Bass and Teresa L. Graham as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**WERDEGAR, J.**—This case calls on us to interpret the California Uniform Aircraft Financial Responsibility Act (hereafter CUAFRA), Public Utilities Code sections 24230 to 24410.[1] In particular, we are required to decide whether an insurance policy for aircraft liability, which the insurer deemed canceled for lack of premium payment, was continued in force, beyond the purported cancellation date, under a provision of CUAFRA stating that certain aircraft liability policies may not be canceled without 30 days' prior notice to the California Department of Transportation (hereafter the department). (§ 24361.)

CUAFRA is not a mandatory insurance law. It contains no requirement that owners or operators of private aircraft maintain liability insurance or that owners and operators generally provide proof of such coverage to the department or any other agency. Instead, CUAFRA requires that *after* certain accidents a noncommercial aircraft owner or operator demonstrate the ability to respond in damages through the deposit of security, proof of a liability policy in force at the time of the accident, or qualification as a self-insurer. (§§ 24325-24353.) In this critical respect, CUAFRA differs from the mandatory insurance law governing commercial truckers that we construed in *Transamerica Ins. Co.* v. *Tab Transportation, Inc.* (1995) 12 Cal.4th 389 [48 Cal.Rptr.2d 159, 906 P.2d 1341].

Read as an integral part of CUAFRA, the cancellation notice provision, section 24361, is ambiguous as to whether it governs cancellation of *all* aircraft liability policies meeting certain coverage minima, or only those policies filed with the department after an accident to satisfy the financial responsibility requirement. Although the legislative intent is not completely clear, we conclude the correct interpretation is the latter one, under which section 24361 comes into play only when an insurance policy has been filed with, or certified to, the department as proof of ability to respond in damages.

---

[1]All further statutory references are to the Public Utilities Code unless otherwise specified.

### Factual and Procedural Background

On October 30, 1992, Danny G. Snider and Jennie Escobedo were killed in the crash of a Piper aircraft. Snider was the owner and operator of the plane; Escobedo was his nonpaying passenger. Escobedo's mother, Mary Ruth Escobedo, brought this action for wrongful death against Snider's estate, but, pursuant to Probate Code section 552, served the complaint on Snider's former insurer, National Aviation Underwriters, Inc. (National), rather than on his personal representative. Under Probate Code section 554, plaintiff's recovery was thus limited to the amount of the insurance coverage, if any.

The pertinent facts regarding Snider's liability coverage with National were undisputed, and in large part were the subject of a stipulation by the parties. Beginning October 12, 1990, Snider was insured by National for liability for personal injury, including injury to passengers, arising from operation of the Piper aircraft. The policy's coverage schedule sheet stated it was effective from October 12, 1990, "until canceled." Consistently, under the heading "Policy Period and Territory," the policy stated: "The policy starts on the effective date and remains in force until canceled." Under the heading "Cancellation," the policy stated: "If you [Snider] do not pay the premiums on time we [National] will consider the policy to be canceled at your request . . . ." A separate endorsement regarding cancellation repeated this language, as well as setting out the grounds on which National could cancel the policy.

In October 1991, Snider continued the policy in force by payment of an additional year's premium. On September 12, 1992, National sent Snider an annual premium bill, stating the policy would be "canceled" as of October 12, 1992, if payment was not received by that date. On October 12, National notified Snider his policy was "canceled" for nonpayment of premium, but could be reinstated with no lapse of coverage if payment were received by October 27. Snider never paid the premium. On October 30, 1992, Snider died in the plane crash.

No notice of the policy's cancellation was sent to the department. Nor was there any evidence the policy, or any certificate of insurance regarding the policy, had ever been filed with the department.

The question of insurance coverage was tried to the court before any other issue. Based on the stipulated facts and other written evidence, the court found no coverage because the policy had "expired" on October 12, 1992, for nonpayment of premium. The trial court rejected plaintiff's claim the

policy had continued in force through a failure to comply with CUAFRA. The court entered judgment for Snider's estate and against plaintiff Escobedo.

The Court of Appeal reversed. In its view, CUAFRA provides that coverage under a noncommercial aircraft liability policy "is continuous and uninterrupted until the insurer or its insured sends a cancellation notice to the Department of Aeronautics." Relying on our decision in *Transamerica Ins. Co.* v. *Tab Transportation, Inc., supra*, 12 Cal.4th 389, the Court of Appeal held the policy could not have "expired" on October 12, 1992, because "[w]here, as here, the Legislature requires that a cancellation notice be mailed to a regulatory agency before the policy is canceled, general principles concerning 'expiration' of the policy have no efficacy."

We granted review on the petition of defendant, Snider's estate.

DISCUSSION

I. *History and Overview of CUAFRA*

In 1954, the National Conference of Commissioners on Uniform State Laws and the American Bar Association approved a Uniform Aircraft Financial Responsibility Act (UAFRA). As the commissioners explain in a preface to UAFRA, the model act is not a compulsory insurance law, since "the requirement of insurance or security does not go into effect until an accident occurs and there is no provision for compulsory insurance or security thereafter," but was intended, rather, as an "incentive" to aircraft owners and operators "to provide for their financial responsibility by taking out liability insurance or otherwise before they operate." (12 West's U. Laws Ann. (1996) U. Aircraft Financial Responsibility Act, Prefatory Note, p. 23.) UAFRA was based, in concept, on existing motor vehicle financial responsibility laws. The commissioners noted that in most states such laws had proven effective, in that "withdrawal of the privilege of further operation of a motor vehicle until security is given has been sufficient to result in insurance being taken in most instances . . . ." (*Ibid.*)

California adopted its version of UAFRA in 1968. While departing from the model act in certain ways, the Legislature retained the central concept of using a requirement for *postaccident* proof of ability to respond in damages as an incentive to owners and operators to obtain and maintain liability insurance.

CUAFRA requires, first, that the owner or operator of a noncommercial aircraft report to the department[2] any accident that resulted in death, personal injury or damage to nonowned property in excess of $400. (§§ 24243, subd. (d), 24300; cf. UAFRA, § 3.) Upon receipt of a report, the department is to determine "the amount of security [within specified limits] which it deems sufficient to satisfy any judgment for damages resulting from the accident which may be recovered against each owner or operator . . . ." (§ 24325; cf. UAFRA, § 4, subd. (a).) The owner or operator must then deposit security in the specified amount, to be used in payment of any judgment or settlement against the owner or operator on a claim arising from the accident. (§§ 24326, 24357, 24358.) Under section 24402, it is a misdemeanor for the owner or operator to operate an aircraft or allow an owned aircraft to operate without having complied with the postaccident security requirements.[3]

Section 24327 sets out several circumstances under which the security requirements do not apply. Among these are that the owner or operator had "in effect at the time of the accident an aircraft liability policy or bond" with respect to the aircraft or its operation. (§ 24327, subds. (d), (e); cf. UAFRA, § 4, subd. (c).)[4] Section 24350, in turn, sets out the requirements for an insurance policy to be "effective under Article 2 [the security provisions, including section 24327]." (Cf. UAFRA, § 5.) These requirements include specified minimum coverage limits for death, bodily injury and property damage, "[i]f the accident results" in such death, injury or damage. (§ 24350, subds. (b), (c).)[5]

Although section 24326 requires deposit of security or proof of applicable insurance only after an accident, an owner or operator *may* take action before

---

[2]The "department" referred to in CUAFRA is "the Department of Aeronautics in the Business and Transportation Agency." (§ 24233.) Under the current organization of state government, the *Division* of Aeronautics is part of the *Department* of Transportation, which in turn comes within the Business, Transportation and Housing Agency. (Gov. Code, §§ 14001, 14007.) In this opinion, "the department" shall refer to the Department of Transportation.

[3]CUAFRA, however, does not adopt UAFRA's provisions for suspension of aircraft registrations and operating licenses. (§ 24250; see UAFRA, §§ 4 and 6.)

[4]The owner or operator is also exempt from the security requirement if covered for the accident under any other form of liability insurance or if qualified as a self-insurer. (§ 24327, subds. (f), (g).)

[5]Notably, the death and bodily injury coverage requirement applies only if the accident results in such death or injury to "a person not a passenger." (§ 24350, subd. (b); see also § 24351, subd. (c) [policy need not cover nonpaying passenger].) As we have previously explained, under these provisions the policy may exclude both paying and nonpaying passengers; CUAFRA's concern is with "third party" victims of noncommercial air crashes, those "who have neither foreknowledge of flights of small aircraft, nor opportunity to assess the risks and to insure against them." (*National Ins. Underwriters* v. *Carter* (1976) 17 Cal.3d 380, 388 [131 Cal.Rptr. 42, 551 P.2d 362].)

any accident to prevent imposition of a security requirement. Under section 24243, subdivision (f), CUAFRA as a whole, with the exception of the reporting requirement, does not apply to any person who has filed with the department, and maintained in force, a certificate of insurance evidencing a policy "meeting the requirements of Section 24350."

Finally, section 24361, the section primarily at issue in this case, provides: "No insurance policy meeting the requirements of Section 24350 shall be canceled unless 30 days' prior notice is given to the department by either the insured or the insurance company." Section 24361, unlike many of CUAFRA's principal provisions, has no parallel in UAFRA.

## II.  *Interpretation of Section 24361*

The language of section 24361 is, we believe, ambiguous. The phrase "insurance policy meeting the requirements of Section 24350" could reasonably be read in either of two ways: as including all aviation liability policies issued by qualified companies and providing personal injury and property damage coverage in the minimum amounts stated in section 24350, or as referring only to policies proffered by an owner or operator under section 24243 or 24327 in order to establish exemption from CUAFRA's requirement for postaccident security.[6]

In plaintiff's view, the "requirements of section 24350" are simply that the policy be issued by an in-state or qualified out-of-state company (§ 24350,

---

[6]Section 24350 provides: "A policy or bond is not effective under Article 2 unless: [¶] (a) Issued either (1) by an insurer or surety company authorized to do business in this state, or (2) by an insurer or surety company not authorized to do business in this state but which is found by the department to afford adequate protection and which has filed or shall file with the department a power of attorney authorizing the department to accept service on his behalf of notice or process in any action upon the policy or bond arising out of such accident. [¶] (b) If the accident results in bodily injury to or death of a person not a passenger, the policy or bond provides coverage of not less than fifty thousand dollars ($50,000) because of bodily injury to or death of one person in any accident and one hundred thousand dollars ($100,000) because of bodily injury to or death of two or more persons in any one accident. [¶] (c) If the accident results in damage to or destruction of property, the policy or bond provides coverage of not less than fifty thousand dollars ($50,000) because of damage to or destruction of property in any one accident with the exception of the following property which is exempted from the security required under this part: property owned, rented, occupied or used by, or in the care, custody or control of the owner or operator or carried in or on the aircraft."

Section 24243 provides, in pertinent part: "This part does not apply to: [¶] . . . [¶] (f) Any person who maintains in effect an insurance policy meeting the requirements of Section 24350 and who has filed with the department a certificate of insurance issued by the insurance company which issued such policy; provided, however, that such person shall, in accordance with the provisions of Section 24300, report each aircraft accident in which he is involved as operator or owner of aircraft."

Section 24327 provides, in pertinent part: "The requirements as to security do not apply: [¶] . . . [¶] (d) To the owner if there is in effect at the time of the accident an aircraft liability policy or bond with respect to the aircraft involved in the accident. [¶] (e) To the operator, if

subd. (a)) and that it include specified amounts of personal injury (subd. (b)) and property damage (subd. (c)) coverage. Thus the class of policies subject to section 24361—those "meeting the requirements of Section 24350"— would include any aviation policy satisfying these issuer qualifications and coverage minima.

Plaintiff's interpretation is plausible when section 24361 is read in isolation from the statutory scheme as a whole. In context, however, this reading arguably misconstrues the meaning of "the requirements of section 24350." Section 24350, by its terms, simply delineates the policies or bonds that will serve to exempt an owner or operator from CUAFRA's postaccident security requirements. It provides that a policy is not "effective" for purposes of that exemption unless certain issuer and coverage criteria are met. It does not set out any "requirements" for aviation liability policies in general, but only the requirements for policies the department may accept as proof of ability to respond in damages after an accident.

Reading section 24361 in the context of CUAFRA as a whole, therefore, a "policy meeting the requirements of Section 24350" is reasonably understood to be a policy proffered to the department by the owner or operator as *postaccident* proof of ability to respond in damages. The language of section 24350 itself supports the latter interpretation, in that the statutory coverage minima are defined in terms of coverage for a *past* accident. Thus, section 24350, subdivision (b)'s personal injury coverage minima apply "[i]f the accident results in bodily injury to or death of a person not a passenger," and subdivision (c)'s property damage minimum applies "[i]f the accident results in damage to or destruction of property." Unless such events occur, section 24350 imposes no "requirements" on aviation liability policies. Under this interpretation, section 24361 applies only when a policy has been filed with the department after an accident pursuant to section 24327 or has been made the basis for a postaccident claim for exemption pursuant to section 24243, subdivision (f).

In its ambiguity, as in other respects discussed below, section 24361 differs from the statute we construed in *Transamerica Ins. Co. v. Tab Transportation, Inc., supra*, 12 Cal.4th 389 (hereafter *Tab Transportation*). In that case, we considered section 3634, part of the Highway Carriers' Act. Section 3634 provides, in part, that "[t]he policy of insurance" is not cancelable on less than 30 days' notice to the Public Utilities Commission.

not the owner of the aircraft, if there is in effect at the time of the accident an aircraft liability policy or bond with respect to his operation of the aircraft involved in the accident. [¶] (f) To the operator or owner if his liability for damages resulting from such accident is covered by any other form of liability insurance policy or bond in effect at the time of the accident."

In statutory context, "the policy" plainly and unambiguously refers to a policy proffered to the commission by a highway freight carrier to satisfy the requirement all such carriers show proof of liability protection. (See §§ 3631-3633; *Tab Transportation, supra*, 12 Cal.4th at pp. 397-398.) The policy at issue in *Tab Transportation* had in fact been registered with the commission for that purpose and was indisputably of the general class of policies to which the cancellation notice provision, section 3634, was intended to apply. In the present case, by way of distinction, we deal with an ambiguous cancellation notice provision, section 24361, and must determine whether the insurance policy at issue is in the category of policies intended to come within that statute.

■ Faced with ambiguous statutory language, we endeavor to find the interpretation that will best further the statutory purposes. (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) "[T]he court must consider the consequences that might flow from a particular construction and should construe the statute so as to promote rather than defeat the statute's purpose and policy." (*Sylva* v. *Board of Supervisors* (1989) 208 Cal.App.3d 648, 654 [256 Cal.Rptr. 138].)

■ Defendant argues plaintiff's interpretation of section 24361 would tend to produce results inconsistent with the purposes and operation of CUAFRA as a whole. Because CUAFRA does not mandate that aviators maintain insurance coverage, defendant points out, there is no requirement the department, or any other state agency, keep records of existing aviation liability policies. Under CUAFRA, the department does not regulate licensing of pilots or registration of aircraft and has no legal authority to require continuous pre-accident liability coverage for either owners or operators and no reason, before an accident, to attempt to ensure the existence of such coverage. The collection of cancellation notices in the department's files would seem, then, a useless enterprise, given that in most cases the department would have no legal reason to have kept a record, and in all likelihood would have no record, of the existence of the canceled policy, and would similarly not be given notice of, or keep any record of, any replacement policy secured when the subject policy was canceled. As one of defendant's amici curiae maintains, we should not interpret section 24361 to "create a system that has never existed in California, and for which there is neither any necessity nor any benefit."

In this respect, defendant correctly distinguishes the Highway Carriers' Act, which we considered in *Tab Transportation*. Under that law, all licensed highway carriers must carry adequate protection against liability. The protection must remain in force throughout the life of the carrier's permit and,

if in the form of an insurance policy or bond, "shall not be cancelable on less than 30 days' written notice to the [Public Utilities] commission." (§ 3634; *Tab Transportation, supra,* 12 Cal.4th at pp. 397-398.) Because the law also requires the policy or a certificate of insurance be filed with the commission (§§ 3632, 3633), the cancellation notice provision (§ 3634) serves to ensure the accuracy of the commission's records and allows the commission to take suspension action if the carrier loses its liability coverage. (*Tab Transportation, supra,* 12 Cal.4th at pp. 402-403.) Unlike the Highway Carriers' Act, CUAFRA requires an insured to file a policy or certificate of insurance with the department only *after* an accident, and only as an alternative to depositing security.[7]

Plaintiff, conceding CUAFRA does not mandate insurance coverage, nonetheless asserts section 24361, interpreted as requiring notice be given to the department before cancellation of *any* aviation insurance policy, "does have a purpose." In brief, plaintiff argues the insurer's compliance with section 24361 could assist the department in determining, after an accident, whether a policy proffered by the insured was still in force at the time of the accident or whether, to the contrary, it had already been canceled. Plaintiff suggests that were the owner or operator to submit, as postaccident proof of ability to respond in damages, a policy that, like the one at issue here, was effective "until canceled," the department could check its files to see if a cancellation notice had previously been received. If not, the department would know the policy was in effect at the time of the accident and would not demand deposit of other security.

In addition to defending her own interpretation in this manner, plaintiff attacks defendant's reading of the statute. Section 24361, plaintiff maintains, would have no functional purpose if it applied only to policies that were in effect at the time of the accident and were proffered to the department after an accident to establish the exemption from security or from CUAFRA as a whole. (§§ 24243, 24327, subds. (d), (e), (f).) If a policy was in force at the time of the accident, plaintiff argues, CUAFRA's goals would be satisfied even if the policy were thereafter canceled, since "no such cancellation could affect the prerequisite fact of there having been coverage at the time of the accident."

---

[7]The legal regime considered in *Tab Transportation* is also distinguishable from CUAFRA in that, pursuant to a Public Utilities Commission order, highway carriers' liability policies must remain in force until canceled (with the required notice). For that reason, we held such a policy could not simply "expire" at the end of its facially stated term. (*Tab Transportation, supra,* 12 Cal.4th at pp. 400-401.) CUAFRA provides authority for no such orders with regard to aviation policies, and the department has apparently made none. Nor does CUAFRA itself speak to expiration of policies, or require that policies remain in force until canceled. The distinction, however, is moot in the present case, since the policy National issued to Snider stated explicitly and repeatedly that it was in effect from October 12, 1990, "until canceled."

Plaintiff's view has some theoretical support. ■ California cases distinguish between *rescission* of an insurance contract, which may be effective retroactively to the time of the act justifying rescission, and *cancellation*, which terminates the contract only prospectively. (*Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 663, fn. 3 [79 Cal.Rptr. 106, 456 P.2d 674]; *Imperial Casualty & Indemnity Co.* v. *Sogomonian* (1988) 198 Cal.App.3d 169, 182 [243 Cal.Rptr. 639].) On the other hand, according to insurance industry usage, a "cancellation" may under some circumstances be made "flat," meaning effective from the policy's inception, eliminating liability for either premiums due or losses incurred in the interim. (*Spott Electrical Co.* v. *Industrial Indem. Co.* (1973) 30 Cal.App.3d 797, 804, 808 [106 Cal.Rptr. 710].) An insured, for example, may "cancel flat" all but one of a set of policies on which the insured's broker has, in negotiating for the best price, obtained binders. (*Id.* at p. 808.) The insurer, it has been said, may also "cancel flat" in order to void a policy issued in error. (*Golden Eagle Ins. Co.* v. *Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1389 [25 Cal.Rptr.2d 242], citing *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1961) 190 Cal.App.2d 392, 396 [12 Cal.Rptr. 71].)

■ Retroactive elimination of coverage, whether called rescission or cancellation, poses an obvious threat to the efficacy of a financial responsibility law such as CUAFRA. If the department has relied, under section 24327, on existence of a policy as establishing the insured's exemption from the security requirement, a later rescission or retroactive "cancellation" could prejudice the ability of accident victims to obtain compensation. In 1968, a commentator identified this problem as a significant weakness of California's then existing motor vehicle financial responsibility law. Interestingly, the writer referred to the problem as one arising from "cancellation" of a policy. (Comment, *The Financial Responsibility Laws* v. *Liability Insurance Cancellation* (1968) 41 So.Cal.L.Rev. 367; see also *Teeter* v. *Allstate Insurance Company* (1959) 9 A.D.2d 176 [192 N.Y.S.2d 610, 613-616], affd. (1961) 9 N.Y.2d 655 [212 N.Y.S.2d 71, 173 N.E.2d 47] [provision of New York motor vehicle financial responsibility law prohibiting "cancellation" without prior notice interpreted as also prohibiting rescission *ab initio* for fraud; "cancellation" held to be used not in the technical insurance sense, but in a colloquial sense as including rescission].)

"Cancellation" thus has sometimes been used, in insurance law and practice, to include retroactive termination of coverage. Such retroactive termination of a policy proffered to the department after an aviation accident, called by whatever name, could prejudicially affect the operation of CUAFRA. Section 24361, therefore, may have been intended, at least in part, to prevent such retroactive "cancellation" or to alleviate the ensuing

prejudice to injured victims. We thus reject plaintiff's argument that section 24361 is without any rational application to policies filed with the department, after an aviation accident, to establish exemption from security requirements under section 24327.

■ In summary, the language of section 24361 is crucially ambiguous. Consideration of CUAFRA's operation and purposes fails to resolve the ambiguity.[8] Neither party has offered a completely satisfactory explanation of the legislative intent, but, at the same time, neither party has shown the other's interpretation is absurd or irrational. The manner in which section 24361 was intended to operate within CUAFRA remains obscure. Under these circumstances it is proper for us to adopt the interpretation that is more consistent with broader legal principles and is likely to have the fairer and more predictable consequences. (See *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323] ["Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation."].)

As we observed in *Tab Transportation*, "[o]rdinarily, an insurance company incurs no liability for an accident that occurs after the policy period has ended." (*Tab Transportation, supra,* 12 Cal.4th at pp. 393-394.)[9] In *Tab Transportation,* we reached a contrary conclusion in the exceptional case of *mandatory* insurance coverage, required of highway carriers for the protection of the public. An unambiguous provision of the Highway Carriers' Act provided that a carrier's liability policy must remain in force during the life of the carrier's permit, and could not be canceled without prior notice to the licensing agency. In light of the clearly expressed legislative policy, we concluded the risk of loss due to an unintentionally extended policy must fall on the insurer who failed to file proof of cancellation, rather than on an injured member of the public. (*Id.* at p. 404.)

CUAFRA, like the Highway Carriers' Act, seeks to protect the public from bearing the costs of accidents unforeseeable to the victims; its stated purpose is "to establish minimum standards for aircraft financial responsibility." (§ 24410.) In CUAFRA, however, the Legislature chose a very

---

[8]We have examined the available legislative history of CUAFRA, but have found nothing specifically mentioning section 24361 or shedding further light on its intended operation. Moreover, although CUAFRA, as an enactment based on uniform model legislation, is to be interpreted "as to effectuate its general purpose to make uniform the laws of those states which enact it [UAFRA]" (§ 24231), section 24361 is not drawn from UAFRA; case law from other states interpreting UAFRA is therefore not helpful in resolving the present controversy.

[9]This statement is necessarily limited to liability policies that define the scope of coverage in terms of an "occurrence," "accident" or similar event, rather than by when a claim is made, and, moreover, may require further elaboration when the occurrence consists of a continuing or progressive condition. (See *Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 673-689 [42 Cal.Rptr. 324, 913 P.2d 878].)

different means of furthering this purpose. Under CUAFRA, neither aviators nor their insurers are required to file policies or certificates of insurance with the department prior to an accident, and the statute provides little incentive for them to do so voluntarily. Given the lack of clear statutory language, it is doubtful many aviators or insurers understood CUAFRA to require notice to the department of impending cancellation of a policy that had never been filed with or certified to the department. Indeed, from the record and briefing it appears few aviation liability policies, and few if any cancellation notices, have been filed with the department since CUAFRA's enactment in 1968. Amicus curiae Associated Aviation Underwriters, which describes itself as "one of the leading aviation insurers in the United States," doing approximately $25 million in business in California annually, asserts: "It has never been the practice of AAU, or of any other aviation insurer to AAU's knowledge, to notify the State of California of the cancellation of any aviation insurance policy." The appellate record includes a declaration from the chief of the department's Office of Airports, William Riesen, that his office "receives only four or five certificates of insurance per year."

Under these circumstances, we are loath to depart unnecessarily from the general rule that liability insurance policies provide no coverage for accidents occurring after their termination. It seems probable that in the 28 years of CUAFRA's existence a large number of aviation liability policies have been canceled without notice being sent to the department. Of those, some unknown number were, like the present policy, effective until canceled. Under plaintiff's interpretation of section 24361, all such policies have remained in force and would continue so until 30 days after the department were to receive notice of their cancellation. The consequences of adopting this interpretation cannot be foretold with certainty, but among them are likely to be confusion, increased or renewed litigation of coverage issues (with unpredictable and inconsistent results), and a greatly increased clerical burden for insurers and the department. Not least important, the unexpected and retroactive extension of a policy's coverage beyond the date of its facial cancellation would be unfair to the insurer, which would have received no premiums for the period (potentially many years) of the unexpected extension.

If the statutory commands were plain, these possible consequences would matter little to our decision; we would have no choice but to interpret the statute in accord with its clear intent. As shown above, however, neither the language of section 24361, nor the purpose it serves within CUAFRA, is at all plain. For that reason, we choose an interpretation of the statute that will result in extending fewer policies' coverage beyond the time of their facial cancellation and will avoid imposing on aviators, insurers and the department a clerical burden of dubious value under CUAFRA. We therefore hold

section 24361 applies only to cancellation of insurance policies that have, before cancellation, been proffered to the department to show financial responsibility after an accident under section 24243, subdivision (f), or section 24327, subdivision (d), (e) or (f).[10]

### III. *Application to This Case*

Plaintiff presented no evidence the policy issued by National to Snider was ever filed with, or certified to, the department. As the party with the burden of proving coverage, plaintiff also had the burden of showing any fact necessary to such a finding, including that the policy at issue fell within the class of policies subject to section 24361. Plaintiff failed to meet that burden. The superior court, therefore, correctly found for defendant on the issue of coverage.

### DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I dissent. I would affirm the Court of Appeal's judgment in favor of the insured, although on slightly different grounds. I have no quarrel with the majority's analysis, but as I shall explain, they err in failing to reach the conclusion to which their own reasoning inevitably must lead.

Public Utilities Code section 24361 provides: "No insurance policy meeting the requirements of Section 24350 shall be canceled unless 30 days' prior notice is given to the department by either the insured or the insurance company." I agree with the majority that the clause "meeting the requirements of Section 24350" is ambiguous. (Maj. opn., *ante*, at p. 1221.) Indeed, "[n]either party has offered a completely satisfactory explanation of the legislative intent, but, at the same time, neither party has shown the other's interpretation is absurd or irrational. The manner in which section 24361 was

---

[10]The dissent agrees section 24361 is ambiguous, but would interpret it in plaintiff's favor because " 'ambiguous insurance statutes are to be construed to carry out the objective of providing coverage,' " and because "[i]ndividual insured parties . . . should be able to rely on arguably ambiguous statutory language as favoring coverage." (Dis. opn., *post*, at pp. 1229-1230.) Whatever the validity and proper scope of the first assertion, it does not support subjecting an insurance company to liability for an accident occurring after the policy has been cancelled because the insured has stopped paying premiums. As to the insured's reliance, we reject the dubious proposition that an aircraft owner or operator, in reliance on the insurer's failure to give prior notice to the department, would decline to pay premiums and knowingly incur facial cancellation of his or her policy. Such reliance would be factually unjustified and highly undesirable as a matter of public policy.

intended to operate within [the California Uniform Aircraft Financial Responsibility Act (CUAFRA)] remains obscure." (*Id.* at p. 1226.)

Hence the majority concede that the clause "could *reasonably* be read in either of two ways: as including all aviation liability policies issued by qualified companies and providing personal injury and property damage coverage in the minimum amounts stated in section 24350, or as referring only to policies proffered by an owner or operator under section 24243 or 24327 in order to establish exemption from CUAFRA's requirement for postaccident security." (Maj. opn., *ante*, at p. 1221, italics added.) Plaintiff asserts that the Court of Appeal's interpretation of Public Utilities Code section 24361 is correct: in essence, that coverage of the policy at issue continued until 30 days after the insurer or the insured notified the Division of Aeronautics that it was canceled.

The majority reject this interpretation because, in their view, it is plausible only when "read in isolation from the statutory scheme as a whole." (Maj. opn., *ante*, at p. 1222.) In other words, they believe that plaintiff's view misses the forest for the trees. But their own conclusion commits that very error. They adopt an interpretation that they find "arguably" (*ibid.*) preferable: that "a 'policy meeting the requirements of Section 24350' is reasonably understood to be a policy proffered to the department by the owner or operator as *postaccident* proof of ability to respond in damages." (*Ibid.*)

Conceivably it may so be understood by a lawyer scrutinizing the majority's analysis. But laypeople, including insurance agents, on seeing the statutory language, would think coverage continues broadly under policies of this type until the insurer sends a notice of cancellation to the Division of Aeronautics. The majority overlook the rule that "[n]ormally, ambiguous insurance statutes are to be construed to carry out the objective of providing coverage. [Citation.] Any provision purporting to limit coverage must be ' "conspicuous, plain and clear." ' " (*Holcomb* v. *Hartford Casualty Ins. Co.* (1991) 230 Cal.App.3d 1000, 1006 [281 Cal.Rptr. 651].) As the majority acknowledge, the statute at issue here does not plainly limit coverage. Indeed, the Court of Appeal decided that it plainly provided for it.

It is undesirable to interpret Public Utilities Code section 24361 in a manner that a layperson cannot understand without resort to the complexities of the majority's analysis. When an insurer finds a statutory provision onerous, it has a strong incentive to lobby the Legislature to change it, and the Legislature is likely to listen. However, it is difficult to conceive that simply requiring an insurer to notify the Division of Aeronautics is particularly onerous. Individual insured parties, who are likely to heed an agent's

advice that their policies remain in effect until canceled according to statute, should be able to rely on arguably ambiguous statutory language as favoring coverage. I therefore dissent.